### BENJAMIN F. PALMER *vs.* THE HARTFORD DREDGING COMPANY.

Third Judicial District, New Haven, June Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A single cause of action should be stated in a single count.

The plaintiff, who sought to recover damages for unlawfully dumping mud from a scow upon his oyster ground, alleged his ownership and possession, but failed to aver that the ground had been duly designated to him or his grantors for oyster cultivation. *Held* that as against a wrong-doer such an averment was not essential.

A writing which refreshes the recollection of a witness so that he can and does testify from memory, is not, as a general rule, itself admissible in evidence in corroboration of the oral testimony so given.

The defendant asked certain of its witnesses what the duties of the dumping inspector were, and whether his directions were obeyed by the defendant in loading and transporting the scows. *Held* that these inquiries were properly excluded as immaterial.

A finding that a certain witness was not, in the opinion of the trial court, qualified to answer the questions put to him as an expert, is enough to justify the ruling excluding them, unless the record clearly discloses some error in reaching that conclusion.

The defendant claimed that a leak in the scow was caused by striking a rock while going out to the dumping ground. *Held* that the plaintiff might show that there were no rocks in that course upon which the scow could have struck.

A witness for the plaintiff testified that upon the morning of the accident he had requested the captain of the defendant's dredge to have the water in the scow siphoned out, and was then permitted to give the conversation which followed, which tended to rebut the captain's testimony. *Held* that there was no error in this ruling.

Technical claims of variance raised after a default and trial of the entire case, according to our practice, come too late to be of any avail to the defendant.

The allegations and finding in the present case reviewed and *held* to present no substantial variance.

It is no part of the duty of trial courts to decide abstract propositions of law.

Argued June 5th—decided September 17th, 1900.

ACTION to recover damages for injury to the plaintiff's oyster-ground caused by the dumping of mud thereon, brought to the Court of Common Pleas in Fairfield County and heard in damages to the court, *Curtis, J.*; facts found and judgment rendered for the plaintiff for $637, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

In November, 1895, the defendant, under proper authority, was engaged in cutting a channel in Stamford harbor, and while towing one of its scows, which was loaded with mud dug from said channel, over the oyster-bed of the plaintiff, the scow overturned and deposited its load of mud on the oyster-bed. This suit is brought for the injury caused thereby.

As originally brought the complaint contained but one count, alleging that the defendant " did unlawfully and without the consent or knowledge of the plaintiff, dump and deposit . . . 200 cubic yards of mud, earth and gravel," from said scow upon said bed and the oysters growing thereon. The defendant demurred to the complaint and the demurrer was overruled.

Subsequently the plaintiff filed a second, third and fourth count, founded upon his one cause of action. In these counts the cause of the upsetting of the scow is alleged in divers ways, which in substance may be stated as follows: In the second it is alleged that it was caused by the defendant's negligence and carelessness (1) in loading the scow, and (2) in conveying it over the oyster-bed. In the third it is alleged that it was caused by using a scow which was leaky, unfit and unsafe for the purpose for which the defendant was using it. In the fourth it is alleged that

the scow, by reason of its leaky condition was unfit for the purpose for which it was used; that the defendant, although it knew or should have known the condition of the scow, carelessly and negligently loaded it with matter dug from the channel, and towed it out to the proper dumping-ground; that by reason of its leaky condition the scow had then so filled with water and careened over on one side that the defendant was unable to dump all of said load; and that while in this condition the defendant. towed the scow over the plaintiff's oyster-bed in such a negligent and careless manner as to cause it to overturn and deposit its contents upon said oyster-bed.

The defendant suffered a default and gave notice (1) that it would deny all the material allegations of the complaint, and (2) would claim and offer evidence to prove that the overturning of the scow was due wholly to unavoidable accident and not to any wilful or negligent act or conduct on the part of the defendant.

The substance of the material facts found may be stated as follows: On the 18th of November, 1895, the plaintiff owned the oyster-bed in question, and there was then growing thereon a crop of oysters from a set caught and planted in 1892. On that day a scow of the defendant, while being towed over this oyster-bed, overturned and deposited thereon about 60 cubic yards of harbor mud. The scow overturned under the following circumstances: The defendant in dredging the channel removed the dredged material in scows to the public dumping-ground, about three miles from the harbor, and beyond the oyster-grounds therein. The scows used were of the kind ordinarily employed for such purpose. On the day before the scow overturned the defendant loaded it with harbor mud and left it in the cut over night. It rested on the bottom of the cut a portion of the time while being loaded and also during the night, as the defendant well knew. While so resting on the bottom a hole was made in the air chamber of the scow, presumably by a rock on which it rested. Except as to this hole the scow was in good seaworthy condition and in every way suitable for use

in defendant's business there. This method of loading is in general use and is not of itself negligent, although it was known by the defendant to be dangerous and to be avoided if possible. No rocks at the place where the scow rested had been noticed by the defendant, but it made no inspection to discover whether rocks were there or not. The defendant well knew that whenever a scow thus rested on the bottom there was danger of its being injured and made to leak, and also knew that rocks had been found there. Next morning said scow was towed out of the cut to the dumping-ground by the defendant. Prior to starting for said grounds the defendant made no examination of the scow to see whether any injury had been done to it by resting on the bottom, nor during the passage to the dumping-ground was any attention paid to see whether it leaked or not. During the passage out the scow leaked badly and settled in the water, but the defendant did not discover this fact till the dumping-ground was reached. The defendant then tried to dump the scow, using all reasonable means to do so, but owing to its condition on account of said leak was unable to do so, and. fearing that the scow would sink, towed it toward the shore for the purpose of beaching it. When the scow had been thus towed a mile or more it suddenly overturned, dumped its mud and floated upside down. The overturn was caused from the leak taking in water enough to overbalance the scow. It did not appear whether or not the defendant knew that the scow was over cultivated oyster-ground when it upset, but it knew there were oyster-beds all about the harbor. There was no negligence on the part of the defendant in its attempts to dump the scow at the dumping-ground, nor in its management of the tow-boat and scow on its return toward the shore. The defendant was negligent, under the circumstances, in not having examined the scow before starting for the dump, and in not having its servants keep watch of the air chamber on the passage out to see whether or not it leaked. If such care had been taken the leak would have been discovered sufficiently early to have avoided. any damage to any one's oyster-ground.

Palmer *v.* Hartford Dredging Co.

The defendant was not guilty of negligence in the manner of towing the scow on its return, or in the direction taken. The defendant knew that the part of the harbor over which its scows passed in this work was extensively used for the cultivation of oysters. The plaintiff, without any negligence on his part, did not discover the presence of any mud on his oyster-bed until August, 1896, and did not locate the point where it had been dumped by the scow until the spring of 1897. In the spring of 1895 he had examined the ground and found the oysters there in fine condition. In the spring of 1897 he found the oysters upon about one acre of his bed, in the vicinity where the scow had upset, dead, and also found a large number dead upon an area of about six acres around this point, where the mud had been carried here and there by the tidal currents. In all, the mud from the scow destroyed 900 bushels of three year old seed oysters of the plaintiff, worth 60 cents per bushel on the bed, equal to $540, for which sum with interest judgment was rendered for the plaintiff.

" The plaintiff's estimate of quantity of oysters destroyed was made in reference to oysters of the size of three year olds, as these were when the tract was examined in 1895. The finding of the court as to the quantity of oysters destroyed, and the cause thereof, is based upon inferences from the foregoing facts and said estimates by the plaintiff. The said estimates of the plaintiff as to quantity were based upon the fact that the bed surrounding said dump, and unaffected by the mud, produced oysters of a uniform quantity, which justified said estimates."

The trial court made certain rulings upon evidence adverse to the defendant, to which due exception was taken. The defendant made certain claims of law in the trial court which were overruled. These claims of law, and the action of the court thereon, and the rulings upon evidence, are sufficiently set forth in the opinion.

The reasons of appeal relate (1) to the overruling of the demurrer; (2) to the rulings upon evidence; and (3) to the overruling of the claims of law.

*Stiles Judson, Jr.*, for the appellant (defendant).

*Samuel Fessenden* and *Michael Kenealy*, for the appellee (plaintiff).

TORRANCE, J.  The plaintiff had but one cause of action and should have stated that in a single count; there was not the slightest necessity for stating it in four separate counts. *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551; *Goodrich* v. *Stanton*, 71 id. 418, 424; *Brown* v. *Wilcox*, 73 id. 100.

The first count alleged that the plaintiff was the owner and in possession of certain described oyster-grounds in Stamford harbor, but did not allege that they had been lawfully designated by the proper authority; and mainly for failing to allege such designation the defendant demurred.  We think the count was not defective in this respect, as against a mere wrong-doer such as it alleged the defendant to be, and that the demurrer was properly overruled.  Besides this, the complaint was subsequently amended in such a way as to fully obviate the objections raised by the demurrer, and the ruling upon it, under the circumstances of this case, did the defendant no harm and cannot avail him for the purposes of a new trial.  *Boyle* v. *McWilliams*, 69 Conn. 201, 205.

During the trial the plaintiff made certain claims as to the extent of the damages, which the court did not finally sustain, and in support of these claims the plaintiff offered certain evidence which the court admitted over the defendant's objections.  As the evidence thus objected to was confined strictly to these claims of the plaintiff which were not sustained eventually, its admission did the defendant no harm; and this makes it unnecessary to consider or discuss the specific rulings thus objected to by the defendant.

It will be convenient here to dispose of the other claimed errors in the rulings upon evidence.

A witness for the defendant refreshed his memory from a writing made by himself, and then testified fully from memory alone.  The defendant then offered the writing itself in

Palmer v. Hartford Dredging Co.

evidence to corroborate the oral evidence of the witness, and the court excluded it. This ruling was correct, unless the writing was admissible in corroboration, as claimed. Where a writing does in truth refresh the memory of a witness, and he can and does testify fully from memory, the general rule is that the writing itself is not admissible in evidence. *Acklen* v. *Hickman*, 63 Ala. 494; *Vicksburg & M. Railroad* v. *O'Brien*, 119 U. S. 99; *Kelsea* v. *Fletcher*, 48 N. H. 282; *Erie Preserving Co.* v. *Miller*, 52 Conn. 444. It does not appear to have possessed the requisites of original evidence, under the rule laid down in *Curtis* v. *Bradley*, 65 Conn. 99, as claimed by the defendant. That applies specially to cases where the writing fails to refresh the memory of witnesses. Here the writing was not claimed as evidence in itself, but only as evidence in corroboration; its exclusion on that ground could not have injured the defendant. It was not admissible in corroboration. Assuming that it contained statements previously made by the witness consistent with his oral evidence, the general rule is that a party cannot strengthen the testimony of his own witness by showing that he has made previous statements to the same effect as his testimony; and the case at bar, upon the point here in question, does not fall within any of the exceptions to that general rule. *Deshon* v. *Merchants' Ins. Co.*, 11 Met. 199, 209; 1 Greenl. on Ev. (16th ed.) § 469*b*.

Witnesses for the defendant were asked by it: (1) what the duties of the dumping inspector were; and (2) whether the defendant, in loading and in transporting the scows, obeyed the directions of such inspector. The court excluded these questions. The questions were immaterial and the ruling was correct.

The court failed to find that a witness for the defendant was qualified as an expert to answer certain questions, and excluded the questions put to him on that ground. The record does not show that the court erred in so doing.

The superintendent of the defendant, who was a witness for it, was asked by it what was the condition of the bottom of the scow in the spring of 1896, and the court excluded the

question.   After changes in the pleadings this matter was fully gone into in depositions.   Whether right or wrong, the ruling did the defendant no harm.

The defendant claimed, in effect, that the leak in the scow was caused by striking a rock while on her course to the dumping-ground, and a witness for the plaintiff, against the defendant's objection, was allowed to testify that there was no rock which the scow could have struck while sailing over that course.   This ruling was correct.

A witness for the plaintiff testified that at the request of the captain of the defendant's tug he asked the captain of the defendant's dredge, on the morning of the accident, to have the water in the scow siphoned out.   He was asked to give the conversation he had subsequently with the captain of the dredge.   The evidence called for tended to rebut the evidence given by said captains for the defendant.   The court, against the defendant's objection, admitted the evidence.   We discover no error in this ruling.

These are all the rulings upon evidence of which the defendant complains, and neither singly nor together do they furnish any ground for a new trial.

The reasons of appeal founded upon the action of the court in overruling certain claims of law made by the defendant, remain to be considered.   Very many of these are founded upon the claim that the negligence found, and upon which the judgment rests, is not the negligence alleged in the complaint.   To this claim there are two conclusive answers: (1) that it is not true; (2) that if it were true, the defendant, under the circumstances of this case, cannot avail himself of it.   The negligence found is, in substance, the use of a scow which was in fact unfit for the use to which it was put, and which the defendant, in law, knew to be unfit for such use, and which it, in law, knew would be likely, if used, to cause damage to the oyster-beds in the harbor.   This negligence is we think substantially and sufficiently alleged in the complaint.   *Bunnell* v. *Berlin Iron Bridge Co.*, 66 Conn. 24. But if this were not so, these technical objections of the defendant, after a default and a full and fair trial under our

practice of the entire case, come too late and will not avail the defendant for any purpose. *Broughel* v. *Southern New Eng. Tel. Co.*, 72 Conn. 617, 627; *Bunnell* v. *Berlin Iron Bridge Co.*, *supra.*

The defendant further claimed that the right of navigation was paramount to that of the cultivation of oysters in Long Island Sound, and that it was the right of the defendant to save the scow in the manner adopted by it "irrespective of antecedent acts of negligence or of the prior leaky condition of the scow." The court did hold that the rights of navigation were paramount to the rights of owners of oyster-beds, but held that upon the facts found the defendant was liable for the damage caused by its negligence. It was not called upon to decide whether the above claim, as an abstract proposition, was correct or not, and it did not decide that question one way or the other.

The defendant further claimed that the measure of damages was "that of the rental value of the land the use of which the plaintiff was deprived of during the period intervening before the next planting season, and the market value of the oysters as they then existed upon the ground as a growing crop." The court found that the mud killed 900 bushels of three year old seed oysters on the land where the mud was deposited, worth sixty cents per bushel on the ground, and gave judgment simply for such damage; and of this the defendant has no reason to complain.

The remaining claims of law are to the effect that there "was no legal data for determining the legal measure of damages, before the court." The record fails to show any foundation for this claim.

In the last reason of appeal it is implied that the court permitted the plaintiff to file the fourth count after the trial and arguments in said cause. It is enough to say that this implication is contradicted by the record, and is therefore of no legal significance.

There is no error.

In this opinion the other judges concurred.