## STATE NAT. BANK v. URRUTIA.*
### (No. 6823.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 28, 1922. Rehearing Denied Jan. 3, 1923.)

**1. Appeal and error ⬤⟝1050(1)—Admission of memorandum of bank deposit made by depositor held error.**

In an action by a depositor against a bank to recover money deposited, where only the depositor and a receiving teller saw the transaction, and the depositor was informed of how the teller thought a mistake in counting the money had been made before the teller saw the depositor again, and would have had time and opportunity to fabricate evidence, admission of a memorandum of the amount claimed by the depositor to have been made by him before making the deposit was prejudicial error.

**2. Witnesses ☞254—Memoranda may be used only to refresh memory.**

Memoranda may be used by a witness only to refresh his memory, and not for purposes of corroboration.

**3. Banks and banking ☞154(7)—Admission of evidence of transactions with third persons tending to corroborate depositor improper in action against bank.**

In an action by a depositor against a bank to recover money deposited, in which the main issue was the amount of a deposit, and in which the testimony was direct and conflicting, the admission of evidence of conversations and transactions of the depositor with his attorney as to mortgage debts he owed or as to telegrams received from others was improper as tending to 'corroborate the depositor by facts independent of the transaction.

**4. Depositions ☞95 — A party should have been permitted to introduce a deposition, part of which was introduced by the opposite party.**

In an action by a depositor against a bank to recover money deposited, after the depositor was allowed to use part of the deposition of a witness who testified in person, the bank should have been allowed to introduce the deposition to show that the testimony of the witness was the same on both occasions.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by Aurelanio Urrutia against the State National Bank. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

J. L. Browne and Taliaferro, Cunningham & Moursund, and W. B. Jack Ball, all of San Antonio, for appellant.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, for appellee.

FLY, C. J. This is a suit by appellee, whose residence is not disclosed by the petition, who sued appellant, doing a banking business in the city of San Antonio, to recover the sum of $9,000 which he alleged he had deposited in the bank, and which he alleged appellant refused to pay to him. The cause was tried by jury, and resulted in a verdict and judgment for appellee in the sum of $9,000.

[1] The evidence presents a peculiar state of facts. Appellee swore that on April 12, 1921, he entered the banking house of appellant, and asked that he be given access to his safety box there, in which he kept his money and valuables. He swore he took from the box a roll which had ten $1,000 bills, and marked the roll $10,000; then he took out a package with five bundles, and counted until he had, with the $10,000, the sum of $15,800. The $800 he put in his coat pocket, and took the $15,000 in six rolls, in his hands, into the bank. He was called by an employé of the bank to a window marked "Savings," and he told the employé that he wanted to deposit money. Appellee swore:

"I delivered the bills in this form: In the right hand I took the first roll, and in my left hand the five remaining rolls. The six rolls were of the same volume, approximately."

He said the employé took the first roll and counted the money, laying it down to his left; then each of the rolls was counted, and placed on his left in full view. The bills remained open after being counted. As he would count a roll the amount was put on a paper. When through counting the employé said in English: " 'How much have you?' I answered very plain in English: '$15,000.' " The amount ·was repeated interrogatively, "15,000?" and appellee said he replied, "15,-000." The employé wrote $15,000 in appellee's pass or deposit book, and handed it back to him, and took the money and placed it in a box in different compartments, and appellee took his passbook and left the bank. Appellee got his lunch, and at 2 o'clock p. m. returned to his office, where he ascertained that an employé of the bank had been there to see him. In compliance with a request he had the bank called on the telephone, and he was asked how much had been deposited by him, and was answered "$15,000," and he told the bank that some one could come and see him. In a few minutes the man to whom the money had been paid came, and when shown the amount entered in the passbook said there had been a mistake. Appellee denied this, and narrated the circumstances under which the deposit had been made. The employé claimed there had been only one $1,000 bill and nine $100 bills instead of $1,000 bills as appellee had represented. Appellee swore ·that he kept a memorandum of the money as he counted it and of his safety deposit box.

The name of the bank employé who received the money for deposit was Warren, and he stated that he was 24 years of age, and had been in the employment of appellant since the year 1917, and was what was known as relief teller—that is one who is substituted for any teller sick or absent or on vacation. He stated that he received a deposit from appellee in April, 1921, between 12 m. and 1 o'clock p. m. The deposit was all in currency. He gave no deposit slip of the money, but Warren made out a deposit slip. He handed in the money and passbook without saying anything. The money was in packages with rubbers around them. Warren counted the money and laid it on the counter in front of him, keeping a memorandum of each package. After finishing the count he added up the amounts, and asked appellee how much he had, and he said, "What?" Then Warren said, "$15,000?" and appellee said, "Yes." The amount of $15,000 was then entered in the passbook, and it was given to appellee, and the deposit slip was torn up

and put in the waste basket. Warren stated that, after he had asked appellee if the amount was $15,000, and he had answered affirmatively, Warren entered the $15,000 in the passbook and handed it to appellee, who immediately left the bank. Warren at once discovered that there was only $6,000 and ran out to find appellee, but could not discover him. He immediately telephoned to appellee's office, and was told that he was not there, and he went to the office and inquired about him, and was told that he would be there at 2 p. m. He went back the second time, and explained the discrepancy in the currency and the entry in the book. Appellee did not show any memorandum claimed to have been made by him when taking the money from the safety deposit box. Warren said appellant did not claim that he was sure as to how much money he had deposited, but part of it might have been left in the box. He showed Urrutia how he had made the mistake in putting the one in the $1,000 in small bills to the left of the $5,000, the sum of the other bills thus making it $10,000 instead of $1,000, which he discovered from his memorandum he had done. He had torn up the memorandum when he discovered the error in it.

It will be noted from the testimony that Urrutia and Warren did not agree that the former never named the amount of the deposit until after the amount had been suggested by Warren, but it is agreed that after that, before he met Urrutia in his office, Warren had fully disclosed how he thought the discrepancy occurred, and that there was a deficiency of $9,000 in the deposit. With the facts as disclosed by Warren indicating that appellee had the suggestion made to him by Warren that he had deposited $15,000, and the further fact that, with the knowledge of what was necessary to strengthen and corroborate his testimony, and time and opportunity to secure a memorandum which would tend to corroborate his testimony, appellee, over the objection of appellant, was permitted to introduce two memoranda different in form from each other, one of which, it was claimed, was made in the presence of Warren after the deposit of the money. There were only two witnesses as to the circumstances surrounding the deposit, one the bank teller, the other the depositor, and, under that state of facts, the testimony introduced to corroborate one or the other should be carefully scanned and scrutinized, and, unless such testimony meets every requirement as to its validity, it should, in the interest of justice, be rejected. Appellee, over objection, testified that he had made a memorandum at the time he took the money from his safety box, and he and Lopez, his secretary, swore that the latter made a memorandum while Warren was in the office, and all these memoranda were admitted in evidence. No one was shown to have seen or heard of these memoranda until after Warren had told the secretary and his master that there had been a deficiency in the deposit of $9,-000, and it became necessary to uphold and sustain the claim of appellee.

[2] Memoranda made by witnesses may be used for the purpose of refreshing the memory, but cannot be put in evidence in corroboration of the recollection of a witness, for the self-evident reason that such memoranda would merely amount to a witness corroborating himself. The rule in regard to the admission of memoranda is that they can only be used to refresh the memory, and not for purposes of corroboration. Ruling Case Law, Ev. § 63; Elliott on Evidence, § 872; Jones on Evidence, §§ 725–730; Palmer v. Hartford Dredging Co., 73 Conn. 182, 47 Atl. 125; Russell v. Hudson River Co., 17 N. Y. 134; Marcly v. Shults, 29 N. Y. 346; Field v. Thompson, 119 Mass. 151; Com. v. Jeffs, 132 Mass. 5; Sackett v. Spencer, 29 Barb. (N. Y.) 180. In the last-named case it was held that, having sworn positively, a witness cannot use a memorandum for the purpose of corroborating his testimony.

Undoubtedly in this case the memorandum was used, not for the purpose of refreshing the memory of appellee, but for purposes of corroboration. Appellee states in his brief "that he testified in detail as to the contents of the memorandum," and that is the strong reason why the memorandum should not have been admitted. Again it is stated that appellee had sworn fully to the contents of the memorandum, and that the same were before the jury, which is the reason why the memorandum was not admissible. This was said, however, to indicate that the admission of the memorandum could not have injured appellant because the substance of it was before the jury. But it was injurious to appellant because, as was intended, it was undoubtedly taken by the jury as corroboration of the facts sworn to by appellee. He testified that he had written down the different sums at the time he was taking the money from the box, and the average juror would be convinced when the paper was introduced that it showed the truth of the testimony. It would not be remembered that the memorandum depended for its verity upon the testimony alone of appellee, and that it might have been prepared after the entry in the passbook. With the evidence as conflicting as it is, and appellee's case depending to a very large extent on his own testimony, we cannot say that the illegal testimony was not injurious. It must have had influence in turning the wavering scales in favor of appellee. No one heard of the memorandum until after the entry had been made in the passbook, and Warren had told the secretary and appellee that there had been a mistake. Points 4 and 5 under assignments of error 2 and 3 and 6 and 7 under assignment of error No. 4, are sustained.

[3] The fifth, sixth, and seventh assignments are sustained. The conversations and

transactions with his attorney, Charles M. Dickson, or as to. mortgage debts he owed, or as to telegrams received from others were not admissible for any purpose. They did not tend to show that appellee had deposited $15,000, and not $6,000, but were intended to create corroboration of appellee by facts independent of the transaction. Appellee may have had use for $15,000 for the payment of it, but that did not tend to prove that he deposited $15,000 in appellant's bank. Appellee seems to labor under the impression that this is a case of circumstantial evidence, but it is one of direct conflicting testimony, and, while pertinent circumstances might be admissible, matters of business between appellee and his attorney and a third party could have no legitimate place in the testimony, and should not be used in the effort to corroborate the evidences of appellee. It was not material what use appellee expected to make of the money deposited with appellant.

[4] The depositions of the witness Warren were taken before the trial, and appellee placed a portion of the same in evidence. Afterwards appellant sought to place in evidence the remainder of the deposition and it was not permitted. The deposition was taken by appellee, and when he used a portion of it appellant should have been permitted to use the balance of it. Of course the witness testified on the stand, and, if appellee introduced a part of the deposition to contradict the oral testimony or to anticipate the oral testimony, appellant should have been allowed to introduce the deposition to show that there was no conflict, and that the testimony was the same on both occasions. The deposition was denied because it was objected that it was cumulative. It may be that the evidence was the same as that given on the stand, and that would be a reason for admitting it in order to show that the witness had consistently adhered to his story. Ruling Case Law, Ev. § 101; Weeks v. McNulty, 101 Tenn. 495, 48 S. W. 809, 43 L. R. A. 185, 70 Am. St. Rep. 693.

The other matters complained of are either unimportant or will not probably arise on another trial.

For the reasons herein indicated, the judgment will be reversed, and the cause remanded.

⊕=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes