KEVIN DALEY *v.* WILLIAM MCCLINTOCK ET AL.
(SC 16979)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued October 21, 2003—officially released January 20, 2004

*Joel T. Faxon,* with whom, on the brief, were *Michael A. Stratton* and *Michael R. Denison,* for the appellant (plaintiff).

*James V. Somers,* with whom were *Robert A. Rhodes* and, on the brief, *Stephen P. Fogerty,* for the appellee (defendant George Geane).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether the trial court abused its discretion by permitting the defendant George Geane[1] to use a prior consistent statement to rehabilitate a witness who had been impeached on cross-examination by a suggestion of recent contrivance and by a prior inconsistent statement. The case was tried before a jury, which returned a verdict in favor of the defendant. The plaintiff, Kevin Daley, appeals from the trial court's judgment rendered in accordance with the verdict,[2] claiming that: (1) the trial court abused its discretion in admitting the prior consistent statement; and (2) this abuse of discretion constituted harmful error. In response, the defendant contends that the trial court properly exercised its discretion in admitting the prior consistent statement. We agree with the defendant, and we affirm the judgment of the trial court.

---

[1] The plaintiff originally brought a negligence action for personal injuries against the following defendants: George Geane, William McClintock, Anthony Cuzzo, Eagle Leasing Company, the town of Orange, Sorenson Trucking Company, Michael Okrent and Elliot Okrent. Prior to trial, the plaintiff settled his claims against every defendant with the exception of Geane and, therefore, he is the only defendant in this appeal.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The record reveals that the jury reasonably could have found the following facts. On May 15, 1993, a one car accident caused extensive damage to a utility pole in Orange, and left the attached utility lines hanging low over the roadway. The plaintiff, along with several other Southern New England Telephone Company (telephone company) employees, was dispatched by the telephone company to reset the pole and fix the wires. The defendant, a police officer for the town of Orange, was assigned to monitor traffic at the worksite. Prior to the completion of the road crew's work, the defendant left the worksite. After the defendant had departed, a tractor trailer driven by William McClintock passed by the worksite and snagged the overhanging utility wires. The resulting tension caused a utility pole to come crashing down on the plaintiff, causing him severe physical injury.

At trial, the defendant introduced testimony from McClintock as to the location of the telephone company road crew at the time of the accident. On cross-examination, the plaintiff impeached McClintock's testimony through a prior inconsistent statement and through a suggestion of recent contrivance. See footnote 6 of this opinion. On redirect examination, the defendant, over the objection of the plaintiff, was allowed to introduce a prior consistent statement given by McClintock in order to rehabilitate his credibility. The prior consistent statement was McClintock's testimony in a deposition that had been taken four years after the accident had occurred, while he was named as a defendant in the present case. See footnote 1 of this opinion. At the conclusion of the trial, the jury returned a verdict for the defendant. The trial court accepted the jury's verdict, denied the plaintiff's motion to set aside the verdict, and rendered judgment in accordance with the verdict. This appeal followed.

We begin by setting forth the applicable standard of review. "It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 28–29, 807 A.2d 955 (2002); *Pestey* v. *Cushman*, 259 Conn. 345, 368–69, 788 A.2d 496 (2002); *State* v. *Copas*, 252 Conn. 318, 326, 746 A.2d 761 (2000). "Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Citations omitted; internal quotation marks omitted.) *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 530, 832 A.2d 1180 (2003).

Concerning the admissibility of a prior consistent statement, the "general rule is that a party cannot strengthen the testimony of his own witness by showing that he has made previous statements to the same effect as his testimony . . . . *Palmer* v. *Hartford Dredging Co.*, 73 Conn. 182, 188, 47 A. 125 (1900). [This court] recognized in *Thomas* v. *Ganezer*, 137 Conn. 415, 78 A.2d 539 [1951], that prior consistent statements may be admitted in certain limited situations and that the determination of this issue is left to the discretion of the trial court. *State* v. *Mitchell*, 169 Conn. 161, 168, 362 A.2d 808 (1975)." (Internal quotation marks omitted.) *State* v. *McCarthy*, 179 Conn. 1, 18, 425 A.2d 924 (1979).

Section 6-11 (b) of the Connecticut Code of Evidence sets forth three limited situations in which the prior

consistent statement of a witness is admissible: "If the credibility of a witness is impeached by (1) a prior inconsistent statement of the witness, (2) a suggestion of bias, interest or improper motive that was not present at the time the witness made the prior consistent statement, or (3) a suggestion of recent contrivance, evidence of a prior consistent statement made by the witness is admissible, in the discretion of the court, to rebut the impeachment." See also *State* v. *Pollitt*, 205 Conn. 61, 77, 530 A.2d 155 (1987) (recognizing same three exceptions at common law prior to adoption of Code of Evidence). In the present case, the plaintiff claims that the trial court abused its discretion because McClintock's prior consistent statement does not fall within any of the three exceptions set forth in § 6-11 (b). We disagree, and we conclude that McClintock's statement properly was admitted under subdivision (3) of § 6-11 (b).

I

Before turning to the specific claims raised by the plaintiff, we first must address the defendant's claim that the plaintiff failed to articulate properly at trial the basis for his objection and, therefore, he failed to preserve the record properly for appellate review. We reject this contention.

"The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of his objection, any appeal

will be limited to the ground asserted." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor,* supra, 262 Conn. 30; see Practice Book § 5-5.

Our review of the record indicates that the plaintiff made an objection that, while not the most artful, sufficiently alerted both the trial court and the defendant to the precise nature of the objection. When the defendant began to ask questions about McClintock's prior deposition, the plaintiff indicated that he would like to object at sidebar.[3] After the sidebar had concluded, and the

---

[3] The transcript indicates the following discussion occurred during the redirect examination of McClintock by Stephen Fogerty, the defendant's attorney:

"[Fogerty]: And then, between 1993 and when your deposition was taken— you have a copy of it there, right?

"[McClintock]: Yes, I do.

"[Fogerty]: And that was taken—

"[McClintock]: February 26 of 1997.

"[Fogerty]: Four years after the accident, right?

"[Michael Stratton, Plaintiff's Attorney]: Your Honor, if I could object on a sidebar, please?

"The Court: All right."

Following an off the record discussion between both counsel and the court, the redirect examination of McClintock continued as follows:

"[Fogerty]: You gave that testimony in 1997, is that right?

"[McClintock]: As far as I recall. I know it was winter because it was cold and I was freezing and it was wind and everything in New Haven.

"[Fogerty]: You had a lawyer representing you at that time, correct, there was a lawyer there with you?

"[McClintock]: Yes, there was.

"[Fogerty]: It wasn't me, was it?

"[McClintock]: No. As far as I know, I've never met you.

"[Fogerty]: And in 1997 you testified that you saw people with coffee cups, is that right?

"[McClintock]: Yes.

"[Fogerty]: I want to turn to page 40.

"[Stratton]: Your Honor, for the record, I object.

"The Court: All right. Overruled.

"[Fogerty]: Page 41. Excuse me. Question: As you were approaching the scene, at any time prior to stopping, did you see any people on or near the highway? That was the question that [the plaintiff's] asked you, right? Read your response.

"[McClintock]: It says, not on or near the highway, they were behind the truck with coffee cups in their hands.

questioning of the witness once again reached the point where the deposition was being explored, the plaintiff stated, "Your Honor, for the record, I object."[4] We conclude, therefore, that the plaintiff properly preserved the record for appeal, and we will review his claims on appeal.

## II

The plaintiff claims that the trial court abused its discretion by admitting McClintock's prior consistent statement under § 6-11 (b) (3) of the Connecticut Code of Evidence.[5] We disagree.

During his cross-examination of McClintock, the plaintiff highlighted the fact that McClintock's testimony was inconsistent with the initial statement that he gave to an insurance investigator shortly after the accident had occurred. In addition, the plaintiff suggested that McClintock had contrived his testimony after conferring with the defendant's attorney that

"[Fogerty]: I have nothing further, Your Honor.

"The Court: Mr. Stratton?

"[Stratton]: Your Honor, nothing further."

[4] Further, we note that Practice Book § 60-5 provides in relevant part: "In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same. . . ."

In the present case, the plaintiff made his objection at a sidebar, in the absence of the jury. When the matter was later raised before the jury, the objection the plaintiff made before the jury incorporated sufficiently the specific grounds that he set forth at sidebar.

[5] In his brief, the plaintiff also claimed that McClintock's prior consistent statement was not admissible under § 6-11 (b) (1) and (2) of the Connecticut Code of Evidence. Because we conclude that the statement properly was admitted under § 6-11 (b) (3), we need not address these claims.

morning, prior to his taking the witness stand.[6] In order to rebut this suggestion of recent contrivance, the defendant introduced, over the plaintiff's objection, testimony that McClintock had given in a pretrial deposi-

---

[6] On direct examination of McClintock, the following exchange occurred between Stephen Fogerty, the defendant's attorney, and the witness:

"[Fogerty]: Did you see—Did you see any [telephone company] employees as you approached the intersection?

"[McClintock]: Yes. They were either behind the left first truck or the left second truck, I'm not even sure, and they all had coffee cups in their hands, or at least the first two that I noticed. I believe there was a group of four of them back there. . . ."

Subsequently, on cross-examination, the following colloquy occurred between Michael Stratton, the plaintiff's attorney, and McClintock:

"[Stratton]: Sir, in your [prior inconsistent] statement you actually—There's no mention in here about [telephone company] guys eating donuts by the side of the road, are there?

"[McClintock]: No.

"[Stratton]: There isn't, is there? In fact, there's no mention that you had even seen the [telephone company] workers at all until after you hit the wires, until after you came to a stop, isn't that true, in the statement?

"[McClintock]: In the statement I said a lot of things to him, what he wrote down, he wrote down.

"[Stratton]: Sir, let's go through it and see what you agree with now and what you don't agree."

After asking McClintock about other parts of his statement, Stratton asked the following questions related to McClintock's testimony that day on the location of the telephone company workers:

"[Stratton]: [Reading from the prior inconsistent statement] 'I could see work trucks facing me in the northbound lane, their lights were on, and saw no pedestrians or workmen.' Is that true, sir?

"[McClintock]: No pedestrians or workmen?

"[Stratton]: Or workmen. Is that what you wrote in your statement?

"[McClintock]: I didn't write the statement, he did.

"[Stratton]: Is this the statement that you signed off on as being accurate and fair and truthful on May 19, 1993?

"[McClintock]: I—That is my signature.

"[Stratton]: *But you disagree with that assessment today, now you've got workmen drinking coffee over on the side of the road?*

"[McClintock]: *That's what they were doing.*

"[Stratton]: *After talking with Mr. Fogerty this morning, is that correct?*

"[McClintock]: *No. I talked to the insurance investigator, I told them that. I told the—*

"[Stratton]: There's no question pending, sir.

"[Fogerty]: *Objection, Your Honor, I'd like an answer because my integrity's being impugned here, improperly, I might add. I'd like this witness to answer . . . .*" (Emphasis added.)

tion. In that deposition, while under oath, McClintock testified just as he had at trial—that he saw workers drinking coffee at the scene immediately prior to the accident.

Before we address the defendant's claim, we first reemphasize that the Connecticut Code of Evidence, as adopted by the judges of the Superior Court in 1999, was intended to restate, in codified form, "Connecticut case law regarding rules of evidence as rules of court . . . ." Conn. Code Evid. § 1-2 (a). As Justice Borden has explained, the Code of Evidence is a " 'code' in the sense of a set of general statements of rules embodied in the prior case law, without, however, being an attempt to restate every nuance, exception and different application of the rules of evidence expressed in that case law. That is why the Commentary accompanies each section, because that Commentary points to the general case law that the Code attempted to codify." D. Borden, "The New Code of Evidence: A (Very) Brief Introduction and Overview," 73 Conn. B.J. 210, 212 (1999). Furthermore, unlike in other situations, "in adopting the Code the Judges formally adopted the Commentary as well. . . . Thus, the Code must be read together with its Commentary in order for it to be fully and properly understood." Id., 213.

The plaintiff claims that *State* v. *Ouellette,* 190 Conn. 84, 98, 459 A.2d 1005 (1983), requires that a trial court, before it may admit a prior consistent statement to rebut a suggestion of recent contrivance, must find: "(1) that the prior statement was made at a time when it would have been natural to make it, independent of its potential use in court; and (2) that the witness has been impeached by a suggestion of recent fabrication." We disagree with the plaintiff's characterization of the precedential value of *Ouellette.*

In *Ouellette,* after a trial to a jury, the defendant was found guilty of risk of injury to a child. Id., 85. On

appeal, the defendant claimed, among other things, that the trial court improperly admitted prior consistent statements as constancy of accusation evidence.[7] Id., 86. Although *Ouellette* did not involve a suggestion of recent contrivance, this court noted that "[b]ecause the rationale of the constancy of accusation exception so clearly suggests the recent contrivance or fabrication exception, there is no analytical reason to approach them differently." Id., 99.

Turning to its analysis of the defendant's claim, this court set forth a new two part test governing the admissibility of prior consistent statements offered either to rebut a charge of recent contrivance or as constancy of accusation evidence. That test, supported by citations to two Pennsylvania Supreme Court decisions, stated that a prior consistent statement is admissible to rebut a charge of recent contrivance or as constancy of accusation evidence when the trial court finds: "first that the statement was made at a time when it was natural to make it; [and] second that the witness has been impeached by a suggestion of recent contrivance." Id.[8] Because that test had not been applied to the constancy of accusation evidence, the court held that it

---

[7] The constancy of accusation evidence in *Ouellette* consisted of statements given by the victim to a police officer, the victim's mother and the hospital staff. *State* v. *Ouellette*, supra, 190 Conn. 96–97.

[8] This test is different from the version cited by the plaintiff, which is also from *Ouellette*, in that it omits the qualifying phrase "independent of its potential use in court" from the first prong. *State* v. *Ouellette*, supra, 190 Conn. 98. Therefore, within *Ouellette*, there are two different versions of the test set forth: one linking admissibility to a statement's potential use in court, and one not. Compare id., 98 (with qualifying phrase) with id., 99 (without qualifying phrase). For two reasons, we conclude that the second formulation, without the qualifying phrase, is the operative test. First, the test with the qualifying phrase is not supported by citations to any legal authority, while the test without the qualifying phrase is supported by citations to two Pennsylvania Supreme Court cases. Second, the test without the qualifying phrase is the version that has been cited subsequently by this court. See *State* v. *Parris*, 219 Conn. 283, 288–89, 592 A.2d 943 (1991) (citing, yet declining to apply, version without qualifying phrase).

was error to admit it, and the case was remanded for a new trial. Id., 100.

Thus, after *Ouellette*, it appeared that the two part test was applicable to the analysis of prior consistent statements offered as constancy of accusation evidence or to rebut a suggestion of recent fabrication. Since *Ouellette* was decided, however, this court has modified the application of that test. In *State* v. *Parris*, 219 Conn. 283, 289, 592 A.2d 943 (1991), this court reviewed *Ouellette* and concluded: "While phrased in terms of a rule to be applied in future cases involving constancy of accusation evidence . . . the [test] announced in *Ouellette* was not essential to the outcome of that case. . . . Consequently, the [test] was merely dictum, without the force of precedent insofar as proper constancy evidence is concerned." (Citation omitted; internal quotation marks omitted.)

After concluding that *Ouellette* was not binding precedent, this court then declined formally to adopt the two part test. This conclusion was supported by three reasons. First, its adoption "effectively would overrule a long line of precedent in the constancy of accusation context with which that dictum directly conflicts." Id. Second, "contrary to the dictum in *Ouellette*, the term 'natural' as employed in our prior caselaw was not connected to any preliminary issue of admissibility for the trial court's resolution." Id., 290. Finally, "again conflicting with the dictum in *Ouellette*, the significance of the timing of a victim's report of the incident traditionally was a matter to be considered by the jury, exclusively, in evaluating the victim's credibility." Id., 291. For all of those reasons, this court "discard[ed] the dictum in *Ouellette* to the extent that it pertains to constancy of accusation evidence . . . ." Id., 292.

At the present time, therefore, the two part test set forth in dictum in *Ouellette* has been rejected for con-

stancy of accusation evidence, but, as the plaintiff in the present case suggests, it may be applicable to prior consistent statements offered to rebut a suggestion of recent fabrication. In order to resolve this confusion, we take this opportunity expressly to "discard the dictum in *Ouellette* to the extent that it pertains to [prior consistent statements offered to rebut a suggestion of recent contrivance], and we reaffirm our precedents prior to *Ouellette* that leave the evaluation of the timing of a [witness' prior consistent] statements and any 'naturalness' thereof in the hands of the jury." Id. In reaching this conclusion, we are persuaded that all of the rationales set forth in *Parris* are equally as applicable to the recent contrivance exception as to the constancy of accusation exception.

In addition, we note that the two Pennsylvania cases cited by *Ouellette* lend no support to the first prong of the two part test: that a prior consistent statement offered to rebut a charge of recent contrivance must be "made at a time when it was natural to make it . . . ." *State* v. *Ouellette*, supra, 190 Conn. 99. In *Commonwealth* v. *Byrd*, 490 Pa. 544, 558, 417 A.2d 173 (1980), the Pennsylvania court merely stated that "[i]t is settled that prior consistent statements are admissible if relevant to rebut a suggestion of recent fabrication." The second case cited by *Ouellette*, as well as by *Byrd*, is *Commonwealth* v. *Wilson*, 394 Pa. 588, 603, 148 A.2d 234, cert. denied, 361 U.S. 844, 80 S. Ct. 97, 4 L. Ed. 2d 82 (1959), in which the only relevant statement is that "[e]vidence of consonant statements, if admissible, are admissible only in rebuttal and then only for the purpose of showing that that which the witness now testifies to has not been recently fabricated and not for the purpose of proving the truth of the present testimony."

Having concluded that the dictum in *Ouellette* is not applicable to our analysis, we once again state that

when a suggestion of recent contrivance has arisen,[9] the determination of whether to allow the introduction of a prior consistent statement for rebuttal purposes is left to the sound discretion of the trial court. Conn. Code Evid. § 6-11 (b) (3); *State* v. *McCarthy*, 179 Conn. 1, 18, 425 A.2d 924 (1979). Furthermore, "[i]n stating that evidence of a witness' prior consistent statement is admissible 'in the discretion of the court,' Section 6-11 stresses the broad discretion afforded the trial judge in admitting this type of evidence." Conn. Code Evid. § 6-11, commentary.

In the present case, the trial court acted well within its discretion in allowing the defendant to introduce prior deposition testimony to rebut a suggestion that McClintock contrived his testimony after talking to the defendant's attorney on the morning of his testimony. This testimony was not admitted for the truth of the matter asserted but, rather, for the limited purpose of rehabilitating McClintock's credibility,[10] which had been impeached by virtue of the plaintiff's suggestion that he had contrived his testimony after a conversation with the defendant's attorney that morning. By introducing McClintock's prior consistent statement, the defendant sought to establish that McClintock had given similar testimony before the alleged conversation with the defendant's attorney had occurred. McClintock's deposition testimony was made prior to the time of suggested contrivance, was consistent with his testimony at trial and, therefore, was, within the trial court's discretion, an appropriate source of rehabilitation.

---

[9] Although the suggestion of recent contrivance was explicit in the present case, we note that it may also arise by implication. *State* v. *Hines*, 243 Conn. 796, 804–805, 709 A.2d 522 (1998).

[10] It is well settled that "[w]here the prior consistent statement becomes admissible, it may not be used as substantive evidence of the facts contained therein, but only to rehabilitate the credibility of the witness which has been attacked." *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 728, 463 A.2d 533 (1983); *State* v. *Dolphin*, 178 Conn. 564, 569, 424 A.2d 266 (1979); see also Conn. Code Evid. § 6-11, commentary.

The plaintiff claims, however, that since McClintock was named as a defendant at the time of the deposition, he was biased against the plaintiff, and, therefore, his deposition testimony was an inappropriate source of rehabilitation. See Conn. Code Evid. § 6-11 (b) (2) (allowing use of prior consistent statement to rebut "a suggestion of bias, interest or improper motive *that was not present at the time the witness made the prior consistent statement*" [emphasis added]). This claim improperly conflates the requirements of subdivisions (2) and (3) of § 6-11 (b) of the Connecticut Code of Evidence.

Under subdivision (2) of § 6-11 (b) of the Connecticut Code of Evidence, a prior consistent statement must have been made before the bias, interest or improper motive arose in the witness. *State* v. *Dolphin*, 178 Conn. 564, 570–71, 424 A.2d 266 (1979). Subdivision (2), however, is not applicable to a prior consistent statement offered to rebut a suggestion of recent contrivance. In the present case, the plaintiff clearly suggested that McClintock had contrived his testimony after talking with the defendant's attorney on the morning he took the witness stand; see footnote 6 of this opinion; thereby implicating subdivision (3) of § 6-11 (b). Any consistent statement given by McClintock prior to that morning, namely, the time of suggested contrivance, became an appropriate source of rehabilitation, regardless of whether McClintock may have been biased or had an interest at the time of that prior statement due to his status as a defendant. Any bias that McClintock harbored at the time of the deposition, which was taken four years prior to the trial, is irrelevant to the determination of whether he contrived his testimony after talking with the defendant's attorney that morning, prior to his taking the witness stand.[11]

---

[11] The fact that the prior consistent statement was made four years after the accident had occurred, when McClintock was named as a defendant in the present action, however, may be utilized properly by the trier of fact in evaluating McClintock's credibility.

"As Justice Story explained: '[W]here the testimony is assailed as a fabrication of a recent date . . . in order to repel such imputation, proof of the *antecedent* declaration of the party may be admitted.' *Ellicott* v. *Pearl*, [35 U.S. (10 Peters) 412, 439, 9 L. Ed. 475 (1836)]." (Emphasis in original.) *Tome* v. *United States*, 513 U.S. 150, 156, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995). The rationale behind this statement is that " '[a] consistent statement, [made] at a time prior to [the suggested time of contrivance] will effectively explain away the force of the impeaching evidence; because it is thus made to appear that the statement in the form now uttered was independent of the discrediting influence.' 4 J. Wigmore, Evidence (Chadbourn Rev. 1972) § 1128, p. 268." *State* v. *Vines*, 71 Conn. App. 359, 371, 801 A.2d 918, cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002). In the present case, McClintock's prior consistent statement dispels the plaintiff's charge that he had contrived his testimony after talking with the defendant's attorney that morning, prior to his taking the witness stand. Accordingly, we conclude that the trial court did not abuse the discretion afforded to it by § 6-11 (b) (3) of the Connecticut Code of Evidence in admitting McClintock's prior consistent statement.

The judgment is affirmed.

In this opinion the other justices concurred.