THE STATE OF CONNECTICUT *vs.* HARRY L. SEBASTIAN.

Third Judicial District, Bridgeport, April Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE AND THAYER, Js.

On the trial on an information under General Statutes, § 1148, with reference to abuse of a female child, the defendant cannot insist as a matter of right that the State shall elect at the outset between two counts charging the commission of the offense at different times, a motion for that purpose being addressed to the discretion of the court.

Evidence, whether direct or indirect, of intercourse at a date later than that charged in the information goes to show the existence of relations between the child and the defendant which tend to make the commission of the act charged more probable and to confirm direct testimony with reference to the act charged. Such evidence, while remote and tending to raise collateral issues, is addressed to the discretion of the trial court, and may, under proper circumstances, be admitted.

A fact is relevant to another fact whenever, in the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable.

Whatever logically tends to aid the trier in determining the issues, is admissible unless excluded by some rule or principle of law.

Remoteness defined.

Upon the trial of an information under General Statutes, § 1148, with reference to abuse of a female child, evidence that at the time of a subsequent miscarriage the girl made charges against the defendant, may be admitted in corroboration in the discretion of the court.

VOL. LXXXI—1                                                    (1)

---

The State v. Sebastian.

---

Abuse other than that involved in the act of intercourse itself, is not
    required to make out a case under this statute.
The case of *State* v. *Bates*, 10 Conn. 372, distinguished.

Argued April 16th—decided June 9th, 1908.

INFORMATION charging the defendant under General
Statutes, § 1148, with carnally knowing and abusing a
female child of the age of fifteen years, at Stamford on
April 9th, 1907, brought to the Superior Court in Fairfield
County and tried to the jury before *George W. Wheeler, J.;*
verdict of guilty and sentence accordingly. *No error.*

It was undisputed that the defendant was a teacher of
music at Stamford, and that the girl in question had been
one of his pupils.

*Nichols C. Downs*, for the appellant (the accused).

*Stiles Judson*, State's Attorney, for the appellee (the
State).

BALDWIN, C. J.   The information contained two counts,
the first charging the commission of the offense at Stam-
ford on April 9th, 1907, and the second charging its com-
mission there between April 1st and August 12th, 1907.
At the commencement of the trial, the accused moved for
an order requiring the State's Attorney to elect upon
which count he would claim a conviction.   This motion
was denied; but with liberty to renew it at the close of
the case for the State.   Before he closed its case, the State's
Attorney, in the absence of the jury but in the presence of
the court, stated that he elected to stand upon the first
count.   The court did not then understand this statement
to amount to an election, but it was so intended by the
State's Attorney, and understood by the counsel for the
defendant, and, at the close of the case for the State, the
court, on hearing the stenographer's notes read, ruled that
it constituted an election at the time when it was made.

The defendant, in a criminal cause of such a nature,
cannot, as a matter of right, insist, at the outset of the

trial, that the State shall elect between counts. A motion for that purpose is addressed to the discretion of the court. *State* v. *Tuller*, 34 Conn. 280, 298. We see nothing to indicate any abuse of such discretion in the case at bar.

Before the election was made, the girl with whom it was alleged that the offense was committed, having testified for the State that she had sexual intercourse with the accused on April 8th or 9th, testified further that they had similar intercourse in the following June and July. After the election she testified as to a similar act in New York, in July.

It is obvious that this testimony tended to raise collateral issues, and bore only indirectly on that which the jury were to decide.

Remote evidence, however, is not necessarily incompetent. Under the circumstances attending the case at bar, we are of the opinion that it cannot be said, as matter of law, that there was error in the admission of the testimony of this witness as to acts of sexual intercourse in June and July, whether received before or after the making of the election. It went to show the existence of relations between her and the defendant which tended to make the commission of the act of a similar nature, which was the subject of the charge, more probable, and so to confirm her previous testimony. That the accused was under the influence of a sexual passion in respect to this girl in July, which led him then to take advantage of her youth in order to gratify it, was logically relevant to the question whether he gave rein in the same manner to such a passion in respect to her, three months before. *Thayer* v. *Thayer*, 101 Mass. 111. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. *State* v. *Blake*, 69 Conn. 64, 76, 36 Atl. 1019.

Unless excluded by some rule or principle of law, any fact may be proved in any case which logically tends to

aid the trier in the determination of the issue. *Plumb* v. *Curtis*, 66 Conn. 154, 166, 33 Atl. 998. The fundamental principle on which the common law as to the reception of evidence has been built up is that whatever is relevant is admissible. Thayer's Preliminary Treatise on Evidence at the Common Law, 522, 269. In the application of this principle, however, courts do not forget that trials must be kept within reasonable bounds as to the time they occupy and the range they cover. Evidence may be relevant, and yet its relevancy may be so slight and inconsequential that to receive it would be to distract attention that ought to be concentrated on what bears directly on vital points, and to confuse rather than to illuminate the case. In determining whether any particular testimony offered on a jury trial belongs to this category or not, a certain discretion is necessarily vested in the presiding judge. *Rosenstein* v. *Fair Haven & W. R. Co.*, 78 Conn. 29, 34, 60 Atl. 1061; *Leonard* v. *Gillette*, 79 Conn. 664, 669, 66 Atl. 502. Remoteness is a matter of degree. The term is one which has regard to other factors than mere lapse of time. *State* v. *Moriarty*, 50 Conn. 415, 419. "The essence of remoteness is such a want of open and visible connection between the evidentiary and the principal facts that, all things considered, the former are not worthy or safe to be admitted in proof of the latter." *State* v. *Kelly*, 77 Conn. 266, 269, 58 Atl. 705. It was fully within the discretion of the trial judge to admit the testimony now in question; guarding, as he did, against its misapplication by instructing the jury that it was not to be considered as proof of offenses other than that charged in the first count. *State* v. *Raymond*, 24 Conn. 204, 206.

In *State* v. *Bates*, 10 Conn. 372, a new trial was granted because, on a prosecution for adultery committed on January 23d, 1834, evidence was admitted of repeated acts of adultery with the same person between September 1st, 1833, and January 23d, 1834. But in that case there was, so far as appears, no election by the State to rely upon any particular act; all being admitted as equally grounds for

conviction.  While the State argued in this court, in op-
posing the motion for a new trial, that proof of adultery
on one day might tend to corroborate evidence previously
offered of adultery with the same person on a later day,
the report does not indicate that the testimony was offered
for that purpose in the Superior Court or that the jury
were instructed that it could be considered by them for
that purpose only.

The girl with whom it was alleged that the offense was
committed further testified in behalf of the State, that on
August 11th she had a miscarriage.  This evidence was re-
ceived in connection with other evidence that a fœtus was
then expelled of about three and a half months develop-
ment; that she had never had sexual intercourse with any
one but the defendant; and that the miscarriage was pro-
duced by something done by a physician, at the defendant's
procurement.  There was no error in admitting proof of
these facts.  They tended, taken together, to show that
the defendant was responsible for her condition, by reason
of sexual intercourse between them, had some time in April,
1907.  The evidence bearing on the probable date of con-
ception did not necessarily exclude its reference to
April 9th, but so far as it went to prove an act of inter-
course later in the month, it was equally admissible, under
the principles already mentioned.

This witness was cross-examined at length and made
answers by which the defendant's counsel claimed that it
was shown that she acquiesced in, and herself sought out
the defendant to establish, whatever relations existed be-
tween them.  She was then allowed to testify, on her redi-
rect examination, that, in his absence, at the time of her
miscarriage, and while the fœtus was being expelled, she
had told her mother that he was the cause of her pregnancy.
Similar testimony was also received from the mother.

Had the charge been one of rape at common law, proof
of complaints made by her that the accused had committed
the crime would have been admissible under our practice,
in corroboration of her testimony, even if not made until a

considerable time had elapsed after the occurrence. The reception of such evidence is justified by the peculiar character of the offense. Being an outrage of the gravest character, it is natural to suppose that the sufferer would promptly inform those standing closest to her of the indignity and shame to which she had been subjected. A failure to make complaint, within a reasonable time, created a strong presumption at common law that there was no ground for making one. 1 Hawkins, Pleas of the Crown, 170. It is obvious that for one who claims to have been ravished to have long kept silence about it, would, if unexplained, weaken the force of any testimony that she might subsequently give in court, in support of a prosecution for such an offense. The ancient English law was that there could be no conviction, if she had not made complaint within forty nights. Spelman, Glossary, *Raptus*. See Glanville, XIV, Chap. VI. Our own statute originally required complaint "forthwith upon the rape." Statutes, Ed. 1702, p. 12. But according to our present practice, the question in case of delay is simply whether it be susceptible of satisfactory explanation; and proof has been admitted of complaints made many months after the time when, as the complainant declared, the rape took place. *State* v. *De Wolf*, 8 Conn. 93, 94, 100. Our decisions in this respect go farther in the admission of what may be termed hearsay than those of most courts administering Anglo-American law. *State* v. *Kinney*, 44 Conn. 153, 156; *Benton* v. *Starr*, 58 Conn. 285, 291, 20 Atl. 450. They are based on the doctrine that the hearsay rule is one of those exceptions to the general principle that all relevant testimony should be admitted which cannot safely be strained beyond their established limits. *Engel* v. *Conti*, 78 Conn. 351, 354, 62 Atl. 210.

While the offense of which the accused stood charged was not rape, it was a crime essentially similar in character. It is not necessary to prove a want of consent on the part of the female; but this is simply because the law declares her incapable of consenting. Being thus incapable, there

must always be a want of consent. Her tender years both render her peculiarly susceptible to the influence of others, and make it imperative that she should be protected against herself. Whether she yield to the solicitations of a seducer, or be the one to propose the guilty act, the law, therefore, declares to be immaterial.

If, however, the case be one of seduction and the female feels that she was wrongfully betrayed into a position where she became the victim of a man's lust by arts and importunities, which she found herself unable to resist, it would be natural that she should communicate the facts to her mother or whatever friend of her own sex may be in the closest relations to her.

Particularly is it to be expected that she will tell the story, and name the man who has abused her confidence, if she finds that pregnancy has been the consequence. Our ancient statute of bastardy, in requiring the complainant to prove that she had "in the time of her travail" named the defendant as the father of her child, recognized as a fact, established by human experience, that, at such a time, a woman in her anguish would be apt to speak as to that matter, and to speak the truth. See *Booth* v. *Hart*, 43 Conn. 480, 485; 3 Wigm. on Ev. § 1763. Similar considerations apply, though with less force, to evidence offered, in a prosecution for an offense of the kind described in the information now before us, of charges made by the female, who was the victim, at the instant of time when she was suffering an abortion. It being natural to expect that such charges would then be made against the defendant, if he were, as the girl whose conduct was in question had testified, the guilty man, and had played the part of a seducer (as the jury might have found), a failure to show that they were in fact made would in some degree have tended to discredit that testimony.

It was therefore within the discretion of the trial court, under the circumstances, to admit the evidence of what she said on August 11th.

General Statutes, § 1148, on which the information is

brought, is directed against "every person . . . who shall carnally know and abuse any female under the age of sixteen years." Obtaining carnal knowledge of a female under the age of ten, though with her consent, was considered by the common law of Connecticut to constitute a rape. 2 Swift's System, 308. It had been a statutory felony in England since 1576, by the Act of 18 Eliz., chapter 7, § 4, which provided that " if any person shall unlawfully and carnally know and abuse any woman-child under the age of ten years, every such unlawful and carnal knowledge shall be felony." Our first statute on the subject was evidently framed with this Act in view. It is found in the Revision of 1821, p. 152, § 11, and declares that "every person who shall carnally know and abuse any female child, under the age of ten years," shall be imprisoned for a term not exceeding that of his life. The English Act, with the verbiage usual in the statutes of the Elizabethan age, had spoken of unlawfully and carnally knowing and abusing a child. The main object in view was apparently to exclude any application of the statute to acts between husband and wife. Child-marriages were then common in all ranks of society, the girl being often under ten years of age. 1 Howard, History of Matrimonial Institutions, 399. In our Revision of 1821 an effort was made to use no unnecessary words. Unlawful carnal knowledge certainly includes what is meant by carnal abuse, if it be not synonymous with that. Rape is defined in Finch's Law (Book III, Chap. XIII) as "the carnal abusing of a woman against her will." Our revisers dropped the word "unlawfully" and retained the word "abuse." Carnal abuse is necessarily implied in carnal knowledge of a female who has given or can give no consent. Bishop on Statutory Crimes (3d Ed.), § 487. Whether it may be something less than that we have no occasion to inquire. See *State* v. *Hummer*, 73 N. J. L. 714, 718, 65 Atl. 249.

In the case at bar, the jury were charged that, in order to justify a conviction, they must be satisfied that the defendant had carnal knowledge of the girl, and that if that

had been proved, abuse was necessarily implied.  A proper definition of carnal knowledge was given to them, to which no exception has been taken.  This being so, the request for an instruction to the jury that to " abuse," within the meaning of the statute, was to injure the genital organs of the child and to injure them to an extent not naturally resulting from an act of normal sexual intercourse with a fully developed female, was rightly refused.

There is no error.

In this opinion the other judges concurred.