## MARGARET O. WITEK v. TOWN OF SOUTHBURY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued April 3—decided May 3, 1945.

*Albert Aston* and *J. Warren Upson*, with whom, on the brief, was *Lawrence L. Lewis*, for the appellant (defendant).

*Edward L. Reynolds*, with whom was *Joseph N. Perelmutter*, for the appellee (plaintiff).

DICKENSON, J.  The plaintiff was injured when her automobile skidded on an icy road maintained by the defendant.  She brought this action for personal injuries and damage to the car, claiming that the de-

fendant breached its statutory duty in the care of the road, and obtained a verdict of $4000. The defendant appeals from the denial of its motion to set aside the verdict and from the judgment.

The jury could have found the following facts: Hull's Hill Road is a public highway about two miles in length in the town of Southbury. At least eighteen families had homes on the road and it was used in connection with state highway No. 188 and other connecting roads. The plaintiff lived with her father on a continuation of the road into the adjoining town of Oxford. She worked in Naugatuck and drove to her work. Because of the icy and rutty condition of Hull's Hill Road, she had been staying with friends who had a house on the road near its junction with route No. 188. During that time, she occasionally drove to her home some two miles farther up the road. On the evening of January 20, 1943, she drove home over Hull's Hill Road, spent the night and left for work about 6 o'clock the next morning. Her course took her by the Olson-Carmody and Johnson homes. The road was straight and level. For a period of three to four weeks it had been covered for the most part with ice. In the tracks usually followed by cars the ice had been worn away to a considerable extent, but there were ridges across it, and in the ice on the side of the wheel tracks nearer the house there were cross ruts three to five inches in depth leading into the Olson-Carmody driveways. When the plaintiff came to this stretch of road, the front wheels of her car struck the ruts, the steering wheel was wrenched from her hands and the car started to skid. She regained her grasp on the wheel and accelerated her speed in an attempt to get out of the skid, but she was unsuccessful, her car ran off the road up a bank and was wrecked, and she was injured. It was dark at the time, the lights of

the car were on, it was traveling at about fifteen miles an hour, and the tires were in good condition. The road was not sanded.

About a week before the accident, the plaintiff's father, while driving his car over the road, had had a slight accident which caused his car to go partly off the road, and he had notified the defendant that the road was in bad condition and needed sanding. His complaint was ignored. A week to ten days before the accident a car skidded and went a little off the road where the plaintiff had her accident, when road conditions were substantially the same. The defendant admitted that the road at the place of the accident was not sanded, contending that it was not required to sand straight and level stretches of road in view of the magnitude of this work compared with the means at its disposal. Witnesses for the defense denied there were ruts of the depth claimed, but some of them, including the first selectman of the defendant town, testified that, if there were such ruts as the plaintiff's witnesses described, the proper manner to treat them was to fill them with sand, and that a load of sand could be purchased and applied at a cost of $6.

The defendant's main claim in its motion to set aside the verdict is that there was no credible evidence of the existence of the cross ruts. The contention of the defendant is that the plaintiff's witnesses testified that the condition of the road at the time of the skidding was the same as shown in exhibit B, a photograph, taken the day following the accident, and that this photograph shows that the ice did not completely cover the highway, and discloses no such cross ruts as claimed. An examination of the exhibit furnishes some support for the defendant's claim, as it fails to show clearly cross ruts of the depth claimed. The photograph, however, covers a long stretch of the road and

patently was taken at an oblique angle to it. One of the witnesses, at least, testified that the conditions were "almost" the same as shown in the photograph and added that it did not show the ruts going into his driveway, where the skidding is claimed to have occurred. Numerous other witnesses testified to the existence and depth of the ruts, and we cannot say that the evidence presented by the photograph was so conclusive of their nonexistence as to discredit the oral testimony that they, in fact, existed. *Willows* v. *Snyder,* 116 Conn. 213, 214, 164 Atl. 385. "If . . . the accuracy of the representation is questioned, this is a question for the determination of the jury like other questions of fact; and it is well known that even photographs may convey very erroneous impressions." Jones, Evidence in Civil Cases (3d Ed.), § 411.

The defendant further claims that the verdict is against the law and evidence in that, while it sanded hills and curves when necessary, it was its policy and practice not to sand straight level stretches of road, and that it was not required to do so in view of the mileage of its roads, the storms, and the means it had available to care for them. The defendant's first selectman testified that he had given instruction to his road crews to take care of any unusual conditions that arose. The plaintiff's claim is not that the defendant's breach of duty was in failing to sand all straight level icy stretches of its road, but in failing to sand a particular one to which its attention had been called and in which the ruts, if they existed as claimed, were conceded by its witnesses, including the first selectman, to be dangerous. The question was one of fact and the jury reasonably could have concluded that the defendant failed in its statutory duty.

A further claim is that the verdict should have been set aside on the ground that the plaintiff was con-

tributorily negligent as a matter of law because, although she was familiar with the condition of the road and stated on cross-examination that she thought chains were necessary, as the road had not been sanded, and that she had chains available, she failed to put them on. The jury could well have understood her as stating a conclusion which had been arrived at in the light of the accident rather than an admission of her belief as to the need of chains before it occurred. The absence of chains as a contributory cause of the accident was a question of fact. The defendant has cited authority to the effect that negligence may be based on a failure to equip a car with chains, although the absence of them does not show negligence as a matter of law. 3-4 Huddy, Automobile Law (9th Ed.), § 73. No other evidence of the efficacy of chains to prevent such an accident as this was offered. The jury might reasonably have found, despite the plaintiff's opinion as to the necessity of chains, that they would not have prevented the sudden wrenching of the steering wheel from her grasp when the front wheels of her car struck a rut.

The defendant also claims that the verdict should have been set aside as excessive. It was agreed that the car was a complete wreck, and the loss as to this was $785. That the car was completely wrecked tends to substantiate certain of the plaintiff's claims as to personal injury. She was healthy and had never been to a doctor before. She was rendered unconscious by the accident and thereafter was hysterical. She was nervous to the time of the trial as a result of it and still suffered from backache, headache, and discomfort in her abdomen. Her forehead and knees were cut, she had bursitis of the right knee, she suffered general muscle bruises and sprains, and she was treated for several weeks by a physician, to whom she still goes monthly.

She has small residual scars. We cannot say that the verdict more than compensates her for these injuries and her property loss. The trial court was not in error in refusing to set aside the verdict.

The defendant offered a witness as to the cost of sanding all of the level stretches of road in the defendant's town if this were done after every storm during the winter season. The question was objected to and the court sustained the objection on the ground that sanding in any event would only be necessary when the roads became dangerous. To this the defendant took an exception. The ruling was correct, particularly in view of the fact that it does not appear that the offer was restricted to ice storms or icy conditions arising out of storms.

The plaintiff offered a witness who testified that he had witnessed an accident on the road about a week or ten days before the date of the plaintiff's accident, and he was asked to describe what he saw. This was objected to on the ground that there was no evidence that the town had had notice of this accident. The testimony was claimed for the purpose of showing a similar accident under similar conditions. The evidence was admissible on that ground, no objection having been made to it on the ground that conditions were not similar. *Tuckel* v. *Hartford,* 118 Conn. 334, 340, 172 Atl. 222. That the trial court deemed it admissible for another purpose is not a ground for finding error in its admission. While the defendant raises other objections to this evidence in its brief, it is confined on appeal to the objection made on the trial. Conn. App. Proc., § 44(b). The ruling was correct.

The court was requested to charge that it was not the defendant's duty to use all possible means to make its highways reasonably safe, but only to use such measures to that end as were reasonable in view of the

circumstances. The court charged that the town was not an insurer, but was required to use reasonable care to keep the roads reasonably safe; that, in determining whether the defendant fulfilled its statutory duty, the jury were to take into consideration the location, character, nature and construction of the road, the amount of travel, the neighborhood, the problem facing the town in respect to maintenance, and the amount of money available and expended. The charge was adequate to meet the request. *Shuchat* v. *Stratford,* 125 Conn. 566, 569, 7 Atl. (2d) 387; *LaBella* v. *Easton,* 128 Conn. 268, 272, 21 Atl. (2d) 926; *Ritter* v. *Shelton,* 105 Conn. 447, 449, 135 Atl. 535; *Davanza* v. *Bridgeport,* 118 Conn. 23, 24, 170 Atl. 484.

Error is assigned in that the court failed to charge in compliance with the defendant's request that the town was under no duty to sand straight level stretches of icy highway, in view of the magnitude of the operation. As we have noted, the issue was not as broad as that. The plaintiff made no such claim, but, in effect, contended that a dangerous condition had existed on such a stretch of road for a considerable period of which complaint had been made to the defendant and that it had refused and failed to take any steps to correct it. The charge adequately covered that issue.

The charge is attacked on the ground that the question of ruts and their effect on the defendant's liability should not have been submitted to the jury, as it was not in issue, no mention having been made of ruts in the notice or complaint. The plaintiff stated in these that her car skidded on ice in the road that constituted a dangerous condition. The defendant's first selectman testified that he examined the road on the day he received the notice. The statements in the notice and complaint were sufficiently definite. *Flynn* v. *First National Bank & Trust Co.,* 131 Conn. 430, 433, 40

Atl. (2d) 770. It is also claimed in this connection that a request that the court charge that the application of sand did not necessarily make such a road safe should have been complied with. The court charged that "It does not necessarily follow that, even if this highway had been sanded, the accident would not have happened," and that the plaintiff was required to prove that, if there had been sand, then the accident would not have happened. This instruction, if erroneous, was too favorable to the defendant.

At the end of the charge, reference was made by the court to a map of the road, and the court stated that the responsibility of the town extended to the entire traveled portion of the road. The defendant assigns error in this, claiming that the only concern of the jury was with that portion of the road upon which the accident occurred, and that according to the plaintiff's own testimony her car was traveling in the wheel tracks of the road until it started to skid. It is sufficient answer to this claim to point out that the course of the car after it started to skid, as well as before, was relevant to the issues. The plaintiff's claim was that the combination of ice across the road and ruts in the ice at one point caused her car to skid and go off the road. The jury reasonably could not have understood the court to mean that the duty of the town extended beyond so much of the road as was actually used for traffic at that time. See *LaBella* v. *Easton,* supra, 268.

The other assignments of error are without merit.

There is no error.

In this opinion the other judges concurred.