STATE OF CONNECTICUT *v.* LEO JOSEPH OUELLETTE
(10799)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

 

Argued January 11—decision released May 10, 1983

*Robert A. Teitenberg,* for the appellant (defendant).

*Katherine J. Lambert,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Warren Maxwell,* assistant state's attorney, and *Maureen T. Platt,* special deputy assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. After a trial to the jury, the defendant was found guilty of one count[1] of risk of injury to a child in violation of General Statutes § 53-21.[2]

---

[1] The defendant was tried on a two count information. The jury returned a verdict of not guilty on the count charging sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1).

[2] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in

On appeal, the defendant claims that the trial court erred: (1) in admitting evidence of alleged prior uncharged sexual acts of the child victim with the defendant and, if admissible, in not charging the jury of the limited purpose for which such evidence could be used; (2) in admitting hearsay statements for purposes of constancy of accusation and, if admissible, in not charging the jury on the limited purpose for which such evidence could be used; and (3) in refusing to allow the defendant to cross-examine the child victim, for the purpose of attacking her credibility, concerning whether she had made allegations of similar sexual misconduct against others.

For the purposes of our analysis, it is unnecessary to go into the sordid details of this case. It suffices to point out that the evidence presented showed that, on June 29, 1979, the defendant performed certain sexual acts upon the victim, as well as having the victim perform acts upon him. At the time of this incident, the victim was eight years old. Also at that time, the defendant was the live-in boyfriend of the victim's mother. It is evident from our examination of the record and the transcript that credibility was crucial in this case.

The defendant challenges, inter alia, the admission and use of the victim's statements during the trial that the same thing had happened "[a]bout ten [times]," first starting when she was six years old.[3] The defendant

---

such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] The questions and answers here were:

"Q. Now, had [the defendant] ever done this to you before?

"A. Yes.

"Q. Same thing?

"A. Yes.

is also challenging the testimony of the victim's mother who stated that the day after the incident in question, her daughter told her that this had happened more than once, starting when the defendant lived with them in Cromwell, which was about one and a half to two years before June 29, 1979. In addition, the defendant is challenging the testimony of police officer Henry Orzel who interviewed the victim the day after the incident, who testified that the victim had "related that [the assaults] occurred . . . off and on since she was six years old." Finally, the defendant is challenging the admittance of a hospital report of the victim that contained, inter alia, notes of the emergency room interviews which recorded the mother's statement that the victim was repeatedly molested by the defendant.[4]

For the purpose of complementing the situation from which the defendant's claims arise, we must refer to certain rulings by the trial court. Prior to the offering of any evidence, the state told the court that the victim's signed statement to the police included her claim that the defendant's brother-in-law had committed similar acts upon her on several occasions in the past. It was pointed out that the defendant wanted to cross-examine on this matter although the state said that it did not plan to go into the victim's sexual activity on direct examination other than that with the defendant. The defendant claimed that such an examination of the victim here would go to her credibility in her accusation of the defendant, maintaining that the police report

"Q. How many times?
"A. About ten.
"Q. How old were you when it first started, if you remember?
"A. About six years old."
This testimony was given on the first day of the trial.

[4] The first sentence in the interviewer's note reads as follows: "Pt. is an 8 yrs. [old] white female brought to the E.R. after her mother today learned that pt. had been sexually molested repeatedly by her (the mother's) boyfriend."

did name the brother-in-law as also having done similar acts. The state told the court that the brother-in-law had disappeared "[a]ccording to the [victim's] mother." The court ruled that the defendant could not cross-examine the victim in that regard as the court did not "think it makes any difference that someone else has also been accused of the same act" and that it was "irrelevant."[5]

Immediately thereafter, the state said that there were further statements by the victim that the "defendant had engaged in similar type activity, sexual activity, with her on several occasions previous to this going back . . . to the time when she was about six years old." It claimed their admissibility under *State* v. *Greene,* 161 Conn. 291, 287 A.2d 386 (1971), which was "a blanket-type of a rule by the Supreme Court." The defendant objected, maintaining that the admission of such evidence was discretionary, and that the court should balance the prejudice caused by such evidence with the fairness of doing so. The court, after examining *Greene* and the authorities cited there, was genuinely concerned about *Greene* which it read as "a form of extension of the constancy of accusation exception" in which that case "extended this particular constancy of accusation exception to the hearsay rule to this particular type of situation." The court, on the basis of *Greene* and the authorities cited therein, overruled the defendant's objections. The defendant took an exception.

After the state had started to put on its case and before the victim testified, the defendant renewed his claim on the admissibility of the prior acts that allegedly took place between the victim and the defendant. He

---

[5] The defendant excepted to this ruling and the court, upon inquiry by him, told him it would not be necessary to make another objection and exception to preserve the record when the matter came up.

argued that the prejudicial value in their admission far outweighed their probative value, that such acts did not go to add to constancy of accusation and that constancy of accusation concerned only the crime charged. The court again ruled against the defendant saying that such evidence was allowed in the *Greene* case.[6] It also stated that "I'll limit them just to the fact that they go to the weight and not to the — the weight to be given to credibility and not to whether or not they actually occurred. They will be limited to that purpose." On direct examination the victim testified concerning the alleged prior acts with the defendant without any comment by the court to the jury involving their limitation. On direct examination the victim's mother testified that the victim told her of the prior acts of the defendant as did officer Orzel. There was no comment by the court to the jury, as they testified, as to any limitation on the use of such testimony.

Just prior to the state's resting its case, the defendant argued that the jury should have been cautioned, at the time the evidence came in, of the limitation of the use of evidence of prior acts. It was the court's recollection, as well as that of the state, that it had not said it would so admonish the jury and it did not do so.[7] The court at that time also said it would charge the jury on the constancy of accusation exception pointing out "that's when they get the limited purpose of

---

[6] In the same colloquy the court said that in *Greene* this court "specifically said the testimony of prior, similar sexual activity was permissible. That's all they said. They didn't say why. . . ."

[7] At that point the defendant was arguing that if such evidence was allowed in for all purposes, "we haven't been allowed to defend ourselves on these other eight or ten dates. We don't even know the dates."

The court observed at that point: "It's not admitted for proving the truth of the other incidents, which are not in issue. It only goes to prove this incident, which is what you're defending on. But it's constancy of accusation for the purpose of showing that this particular incident occurred."

the accusations, but not as an admonishment to them during the course of the trial, not to prove the truth of all of the other incidents, only to prove the truth of this particular incident. . . . They will get it in their charge. That's when I will give it to them."[8]

We turn to the defendant's first two claims which are interrelated as the evidentiary rulings admitting the evidence complained of implicate the issue of constancy of accusation. In the first instance, the defendant asserts error in the admission of evidence of uncharged similar prior sexual acts upon the victim by the defendant through the victim, her mother, officer Orzel and the hospital record. He then claims that even if such evidence were admissible, the court erred in not instructing the jury on the limited purpose for which it could be considered by them in passing upon his guilt or innocence of those crimes for which he was in fact charged and tried. We find error.

It is apparent from the transcript of the trial, the briefs and the arguments before us that the evidentiary rulings on this branch of the case involved our opinion in *State* v. *Greene,* supra. In that case the defendant was charged with crimes of carnal knowledge of a minor female and indecent assault. *State* v. *Greene,* supra, 292. There is language in that case which, although laconic, is expansive in tone and which could have been, and was, applied by the trial court, without great strain, to the circumstances of this case. Specifically, the court there stated: "The first contested evidential ruling was one which permitted the complaining witness to testify that the defendant began having sexual intercourse with her when she was eleven years old and that it happened every week. The other permitted her sister-in-law to testify that the complaining witness had shown her the marks on her neck and

---

[8] The court granted the defendant an exception.

told her about the fight with the defendant, that he was the father of her child and that they had frequent sexual relations. We find no error in the rulings of the court, predicated on such cases as *State* v. *Purvis,* 157 Conn. 198, 207, 251 A.2d 178 [1968], cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246 [1969]; *State* v. *Dziob,* 133 Conn. 167, 169, 48 A.2d 377 [1946]; *State* v. *Sebastian,* 81 Conn. 1, 3, 69 A. 1054 [1908]; *State* v. *Byrne,* 47 Conn. 465, 466 [1880]; *State* v. *Kinney,* 44 Conn. 153, 155 [1876]; *State* v. *De Wolf,* 8 Conn. 93 [1830]; see also 1 Wharton, Criminal Evidence (12th Ed.), p. 547 and 1971 Cum. Sup., pp. 133, 134; 1 Wharton, op. cit. § 295; note, 77 A.L.R.2d 841, 852." *State* v. *Greene,* supra, 294–95. The opinion places no apparent limitation either on the testimony of the victim concerning the prior sexual assaults, or on the testimony of the victim's sister-in-law regarding the victim's statements to her relating the prior incidents. Furthermore, we must agree that this testimony is similar to that which the state introduced in the present case. We cannot agree, however, that the broad language in *Greene* justifies the introduction of the evidence at issue in this case.

It is the general rule that a case resolves only those issues explicitly decided in the case. See *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 416n, 426 A.2d 1324 (1980); *State* v. *DellaCamera,* 166 Conn. 557, 561, 353 A.2d 750 (1974); *State* v. *Darwin,* 161 Conn. 413, 421–22, 288 A.2d 422 (1971). Furthermore, it is well to note that traditional doctrine is that the precedential value of a decision should be limited to the four corners of the decision's factual setting. *Armour & Co.* v. *Wantock,* 323 U.S. 126, 132–33, 65 S. Ct. 165, 89 L. Ed. 118 (1944), reh. denied, 323 U.S. 818, 65 S. Ct. 427, 89 L. Ed. 649 (1945); *Cohens* v. *Virginia,* 19 U.S. (6 Wheat.) 264, 399–400, 5 L. Ed. 257 (1821); *Satty*

v. *Nashville Gas Co.,* 522 F.2d 850, 853 (6th Cir. 1975). One court has providently observed that "[t]he statement of a rule of law in a given case must be tempered by the facts which give rise to its pronouncement." *Ours* v. *Lackey,* 213 Kan. 72, 79, 515 P.2d 1071 (1973). We recognize that while case law should not be inflexible, the adhesive which case law imparts to the collective endeavors of society must be of dependable consistency and available for reliance unless some change is clearly mandated.

*Greene,* unlike the case before us, was tried to the court and not to the jury. In trials to the court, where admissible evidence encompasses an improper as well as a proper purpose, it is presumed that the court used it only for an admissible purpose. *West Hartford* v. *Talcott,* 138 Conn. 82, 93, 82 A.2d 531 (1951); *Hygeia Distilled Water Co.* v. *Hygeia Ice Co.,* 70 Conn. 516, 530, 40 A. 534 (1898). The *Greene* case, therefore, should not be interpreted as providing a "blanket-type" rule or a "form of extension of the constancy of accusation exception" authorizing the admission of the type of evidence as was admitted here. Rather, it should be read as applying the evidentiary doctrines set forth in the authorities cited in the opinion. With these general admonitions in mind, we now turn to the specific evidentiary rulings in this case.

We take up first the issue of the victim's testimony of the prior uncharged crimes of similar sexual acts performed upon her by the defendant. Such testimony was not hearsay as she was relating something of which she had personal knowledge. The "constancy of accusation" doctrine is an exception to the hearsay rule that permits *witnesses* to whom a victim has complained of the offense charged to testify as we have pointed out above. In *State* v. *Brice,* 186 Conn. 449, 453–54, 442 A.2d 906 (1982), we said: " 'Such testimony is ad-

mitted . . . when the complainant first has testified, in court, to the facts of the alleged occurrence, in order to corroborate her testimony. *State* v. *Orlando,* [115 Conn. 672, 677, 163 A. 256 (1932)]. She is then permitted to state that she made complaint to some other person. Thereupon, the person to whom she complained, out of court and in the absence of the defendant is permitted to testify . . . .' *State* v. *Segerberg,* [131 Conn. 546, 549, 41 A.2d 101 (1945)]. The corroborating statements are 'received to shew [sic] *constancy* in the declarations of the witness.' (Emphasis in original.) *State* v. *De Wolf,* [8 Conn. 93, 100 (1830)]; see *State* v. *Orlando,* supra. 'It is manifest that the rule of "constancy of accusation" applies only when the complainant has testified.' *State* v. *Segerberg,* supra, 549." (Footnote omitted.) Therefore, *State* v. *Greene,* supra, cannot be claimed as authority for saying, as the trial court did, that the constancy of accusation exception, which applies to witnesses and not the complainant, was extended to cover her testimony of prior uncharged crimes.[9]

This, however, does not end our inquiry here because the fact that the ground upon which the trial court admitted this testimony was improper does not make its admission erroneous. *Witek* v. *Southbury,* 132 Conn. 104, 110, 42 A.2d 843 (1945); 5 C.J.S., Appeal and Error § 1464 (3). This testimony of the victim was that of prior uncharged crimes. "We have had occasion recently to discuss at length the general rule that prior criminal misconduct may not be shown to prove the bad character of an accused or his tendency to commit criminal acts, together with the well-recognized exceptions to that rule, and to review the pertinent authorities. 'This court has long recognized the danger

[9] In arguing the admissibility of this evidence, the state said: "And I make my claim under *State* v. *Greene,* 161 Conn. [291, 287 A.2d 386 (1971)]. Now, that is a blanket-type of a rule by the Supreme Court."

of prejudice against the defendant which may result from the admission of such evidence. *State* v. *Gilligan,* 92 Conn. 526, 530, 103 A. 649 [1918]. "As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him." *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368 [1970], quoting from *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399 [1960]. Such evidence is admissible for a variety of other purposes, however, such as "when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive, a system of criminal activity. . . ." [Citations omitted.] "That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material; *State* v. *Marshall,* 166 Conn. 593, 600, 353 A.2d 756 [1974]; *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368 [1970]; see *State* v. *Jenkins,* 158 Conn. 149, 152–53, 157, 256 A.2d 223 [1969]; and if the trial judge determines in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199 [cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973)]; *State* v. *Holliday,* supra, 173." *State* v. *Ralls,* 167 Conn. 408, 417, 356 A.2d 147 [1974] . . . .' " *State* v. *Hauck,* 172 Conn. 140, 143–44, 374 A.2d 150 (1976), quoting *State* v. *Brown,* 169 Conn. 692, 700–701, 364 A.2d 186 (1975).

In *State* v. *Sebastian,* 81 Conn. 1, 69 A. 1054 (1908), this court also approved of the admissibility of evidence of similar uncharged crimes. The evidence was not, however, admissible for all purposes. As the court stated: "It went to show the existence of relations between [the victim] and the defendant which tended to make the commission of the act of a similar nature, which was the subject of the charge, more prob-

able . . . ." *Id.* 3. Furthermore, the court clearly indicated that the jury was to be instructed of the limited purpose of the testimony: "It was fully within the discretion of the trial judge to admit the testimony now in question; guarding, as he did, against its misapplication by instructing the jury that it was not to be considered as proof of offenses other than that charged in the first count. *State* v. *Raymond,* 24 Conn. 204, 206 [1855]." *State* v. *Sebastian,* supra, 4. Therefore, we find error in the failure of the trial court to instruct the jury of the limited purpose of such testimony. We must now determine whether this error was harmful.

The state argues that the total of eight words in the victim's responses to four brief questions of the defendant's prior sexual misconduct does not even raise apparent harm. Moreover, the state argues that such testimony "could not probably have affected the verdict."[10] The devastating effect of a ten year old child's testimony reasonably bears no relation to its brevity. This is especially true in the complete absence of any limiting instruction as to its use. "Since the likelihood that juries will make such an improper inference [that a jury may infer that evidence of one crime proves the disposition to commit the crime charged] is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose." *Drew* v. *United States,* 331 F.2d 85, 89–90 (D.C. Cir. 1964); see

---

[10] The questions and answers here were:
"Q. Now, had [the defendant] ever done this to you before?
"A. Yes.
"Q. Same thing?
"A. Yes.
"Q. How many times?
"A. About ten.
"Q. How old were you when it first started, if you remember?
"A. About six years old."
This testimony was given on the first day of the trial.

*State* v. *Oliver,* 161 Conn. 348, 361, 288 A.2d 81 (1971). One court has aptly noted in a rape case: "[W]hen evidence of the defendant's other crimes is admitted for a limited purpose, there is the danger that the jury nevertheless will misuse the evidence and infer improperly that the defendant committed the charged offense because he had committed other crimes in the past. Accordingly, in order to vitiate this potential prejudice, we generally have required the trial court, sua sponte if necessary, to instruct the jury as to the limited purpose for which such evidence is admitted and for which it is to be considered. See *Dixon* v. *United States,* D.C. App., 287 A.2d 89, 99, cert. denied, 407 U.S. 926, 92 S. Ct. 2474, 32 L. Ed. 2d 813 (1972); *United States* v. *French,* 152 U.S. App. D.C. 325, 332, 470 F.2d 1234, 1241 (1972), cert. denied, 410 U.S. 909, 93 S. Ct. 964, 35 L. Ed. 2d 271 (1973). Cf. *Miles* v. *United States,* [374 A.2d 278, 283 (D.C. App. 1977)] (failure to give limiting instruction in absence of request not plain error in light of strong evidence of defendant's guilt)." *Sweet* v. *United States,* 449 A.2d 315, 319 (D.C. App. 1982). No such limiting instruction was given in this case. We note that the defendant's exception, which was in the disjunctive, alerted the trial court to its failure to give an instruction limiting the use of such evidence by the jury.[11] The defendant has sustained his burden of showing harmful error.

We now turn to the testimony of the victim's mother, the police officer, and the statements in the hospital report, all of which referred to statements made by the victim of prior uncharged sexual assaults committed

---

[11] The defendant's brief states: "The defendant took exception to the charge '. . . I objected during the initial — during the course of the trial to allowing the child to go into testimony of other acts, an alleged ten or eleven times, I believe. There's nothing in the charge to limit that to constancy of accusation *or as tending to prove this one act.* The jury is left to just consider the whole aspect. . . .' " (Emphasis added.)

upon her by the defendant. The introduction of all this evidence was claimed as admissible by the state as coming within the "constancy of accusation" exception to the hearsay rule. There can be no serious question concerning the viability of the "constancy of accusation" exception to the hearsay rule in sex-related cases in this jurisdiction.[12] See, e.g., *State* v. *Hamer,* 188 Conn. 562, 564–65, 452 A.2d 313 (1982); *State* v. *Brigandi,* 186 Conn. 521, 525–28, 442 A.2d 927 (1982); *State* v. *Brice,* 186 Conn. 449, 452–54, 442 A.2d 906 (1982). In such cases "we have long recognized that a witness, to whom a victim has complained of the offense, could testify 'not only to the fact that a complaint was made but also to its details.' " *State* v. *Brice,* supra, 453. In *State* v. *Hamer,* supra, we discussed the constancy of accusation exception in the context of the prior consistent statement exception to the hearsay rule and we said: "Although generally prior consistent statements are barred by the hearsay rule if sought to be used to prove the truth of the matters asserted therein; *State* v. *Dolphin,* 178 Conn. 564, 568, 424 A.2d 266 (1979); there are exceptions. In sex-related cases witnesses to whom the complainant has related the particulars of the incident are permitted to recount the details of the statement; *State* v. *Brice,* 186 Conn. 449, 453, 442 A.2d 906 (1982); provided that the complainant first testifies concerning the offense; *State* v. *Segerberg,* 131 Conn. 546, 548–49, 41 A.2d 101 (1945); and also identifies the persons to whom she made the statement. *State* v. *Brice,* supra, 453–55. The statement is admissible as an exception to the hearsay rule to corroborate the complainant's testimony by showing constancy of accusation. *State* v. *Brice,* supra, 453; *State* v. *Orlando,* 115 Conn. 672, 677, 163 A. 256 (1932)."

[12] This viability persists although the statutory requirement of corroboration was repealed by Public Acts 1974, No. 74-131 of the 1974 Session of the General Assembly.

In *State* v. *Brown,* 187 Conn. 602, 608, 447 A.2d 734 (1982), we referred to another exception to the general rule of inadmissibility of prior consistent statements which exists when a witness is impeached "by a suggestion of recent contrivance. *State* v. *Dolphin,* supra, 568 n.5; 4 Wigmore [Evidence (Chadbourn Rev.)] §§ 1129, 1130." *State* v. *Brown,* supra. "Impeachment on the ground of recent contrivance . . . is more nearly connected with the case of impeachment by self-contradiction. The charge of recent contrivance is usually made, not so much by affirmative evidence, as by negative evidence that the witness did *not* speak of the matter before, at a time when it would have been natural to speak; his silence then is urged as inconsistent with his utterances now, i.e., as a self-contradiction . . . . The effect of the evidence of consistent statements is that the supposed fact of not speaking formerly, from which we are to infer a recent contrivance of the story, is disposed of by denying it to be a fact, inasmuch as the witness did speak and tell the same story . . . ." 4 Wigmore, Evidence (Chadbourn Rev.) § 1129, pp. 270–71; *State* v. *Dolphin,* 178 Conn. 564, 568 n.5, 424 A.2d 266 (1979).

The exception of recent contrivance, which we found inapplicable in *State* v. *Brown,* supra, 609, and *State* v. *Dolphin,* supra, is applicable in this case. Before a court, however, may admit prior consistent statements in response to impeachment on the ground of recent contrivance, the court must find: (1) that the prior statement was made at a time when it would have been natural to make it, independent of its potential use in court; and (2) that the witness has been impeached by a suggestion of recent fabrication.

Statements admissible under constancy of accusation are actually a subcategory of prior consistent statement evidence. When analyzed as prior consistent statements

admissible to rebut a suggestion of recent fabrication, the confusion surrounding the admissibility of constancy of accusation evidence is reduced. The rationale for admitting hearsay declarations as constancy of accusation evidence has been stated as follows: " 'If a female testifies that such an outrage has been committed on her person, an enquiry is, at once, suggested, why it was not communicated to her . . . friends. To satisfy such inquiry, it is reasonable that she should be heard in her declarations, that she did so communicate it . . . . [S]uch a course [of conduct] would be natural if the crime had been committed, but very unnatural if it had not been.' " (Citations omitted.) *State* v. *Segerberg,* 131 Conn. 546, 549, 41 A.2d 101 (1945). This rationale is essentially the same as that stated above for admitting prior consistent statements to counter a suggestion of recent contrivance or fabrication.

Because the rationale of the constancy of accusation exception so clearly suggests the recent contrivance or fabrication exception, there is no analytical reason to approach them differently. Before either kind of evidence can be admitted, the trial court must find, under the circumstances in each case, first that the statement was made at a time when it was natural to make it; second that the witness has been impeached by a suggestion of recent contrivance. See *Commonwealth* v. *Byrd,* 490 Pa. 544, 558, 417 A.2d 173 (1980); *Commonwealth* v. *Wilson,* 394 Pa. 588, 148 A.2d 234, cert. denied, 361 U.S. 844, 80 S. Ct. 97, 4 L. Ed. 2d 82 (1959). In a sexual assault case, however, when the evidence concerns the crime charged, the trial court may presume, for the reasons stated in *State* v. *Segerberg,* supra, and in 4 Wigmore, supra, that the victim is impeached by a suggestion of recent contrivance. We wish to make clear that in admitting evidence in this context, it must be evidence directed

only to the particular suggestion of recent contrivance or "impeachment that [has] occurred." See *United States* v. *Mitchell,* 385 F. Sup. 161, 163 (D.D.C. 1974), aff'd sub nom. *United States* v. *Haldeman,* 559 F.2d 31 (D.C. Cir. 1976), cert. denied, 431 U.S. 933, 97 S. Ct. 2641, 53 L. Ed. 2d 250, reh. denied, 433 U.S. 916, 97 S. Ct. 2992, 53 L. Ed. 2d 1103 (1977); *United States* v. *Quinto,* 582 F.2d 224, 234 (2d Cir. 1978); *State* v. *True,* 438 A.2d 460, 465 (Me. 1981); *Rease* v. *United States,* 403 A.2d 322, 328 (D.C. App. 1979).

In this case, the victim's testimony did not concern the crime charged and was therefore not an "accusation" as that word is used in the cases. A review of our cases on constancy of accusation; see *State* v. *Brice,* 186 Conn. 449, 453, 442 A.2d 906 (1982) and cases cited therein; demonstrates that the exception applies only to testimony of witnesses to whom the victim complains concerning the act charged. Because the prior consistent statements were admitted concerning acts not charged, they were not constancy of accusation, and the presumption described above does not apply. Furthermore, because the evidence of the victim's mother, officer Orzel and the hospital record was admitted without a finding both that the statement was made at a time when it would be natural to do so and that the witness-declarant had been impeached by a suggestion of recent fabrication, it was error to admit the evidence. If upon retrial the court should make the required findings, the evidence would be conditionally admissible, subject to a proper exercise of the court's discretion concerning the relative weight of its probative force against its prejudicial effect.

Finally, we take up the claim that the court erred in refusing to allow the defendant to cross-examine the victim on whether she had made complaints of similar

sexual misconduct against others.[13] The defendant claimed it on the ground of credibility.[14] The court, as noted above, said that it made no difference that someone had been so accused and that it was irrelevant.

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* v. *Alaska,* 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Brigandi,* 186 Conn. 521, 533, 442 A.2d 927 (1982); see *State* v. *Luzzi,* 147 Conn. 40, 47, 156 A.2d 505 (1959). "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" *Davis* v. *Alaska,* supra, 315–16, quoting 5 Wigmore, Evidence (3d Ed. 1940) § 1395, p. 123. The denial or undue restrictions of the right can at times constitute constitutional error. *Davis* v. *Alaska,* supra, 318; *State* v. *Haskins,* 188 Conn. 432, 454, 450 A.2d 828 (1982). We have observed that "[t]he constitutional standard is met when defense counsel is 'permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980), quoting *Davis* v. *Alaska,* supra, 318.

The trial court enjoys a liberal discretion in fixing the limits of cross-examination, particularly if it affects credibility. *State* v. *Croom,* 166 Conn. 226, 231, 348

[13] Although this specific issue is not set out in the preliminary statement of issues, it was an issue at the trial and was decided by the trial court and it has been briefed and argued by the parties and we will consider it in this case. Practice Book §§ 3012 (a), 3060F, 3063; *Scott* v. *General Iron & Welding Co.,* 171 Conn. 132, 139, 368 A.2d 111 (1976); *Bright* v. *Zoning Board of Appeals,* 149 Conn. 698, 703, 183 A.2d 603 (1962).

[14] In arguing for the right to do this the defendant told the court that the police knew, from the written statement given them and signed by the victim and her mother, that she had accused a brother-in-law of the defendant of committing similar acts upon her in the past.

A.2d 556 (1974); *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970); see *State* v. *Gionfriddo,* 154 Conn. 90, 96, 221 A.2d 851 (1966). We have said that "[o]ther than exploration of credibility, the scope of cross-examination is limited to the subject matter of the direct examination." *State* v. *Moye,* 177 Conn. 487, 507, 418 A.2d 870, vacated on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979); see *State* v. *Zdanis,* 173 Conn. 189, 195, 377 A.2d 275 (1977); *State* v. *Hall,* 165 Conn. 599, 607, 345 A.2d 17 (1973); *State* v. *Evans,* 165 Conn. 61, 64, 327 A.2d 576 (1973). "The extent to which cross-examination to affect credit will be permitted to raise collateral issues rests largely in the discretion of the trial court. *State* v. *McGowan,* 66 Conn. 392, 396, 34 A. 99 [1895]; *State* v. *Esposito,* 122 Conn. 604, 609, 191 A. 341 [1937]." *Eamiello* v. *Piscitelli,* 133 Conn. 360, 370, 51 A.2d 912 (1947). Cross-examination, in quest for the truth, provides a means for discrediting the testimony of a witness. "When pursued for that purpose, the examination frequently and legitimately enters into matters collateral to the main issues." *Hirsch* v. *Vegiard,* 137 Conn. 302, 304, 77 A.2d 85 (1950). Matters which might not be strictly relevant on direct examination may be so on cross-examination where that matter is explored for the purpose of credibility. Given that function of cross-examination in shedding light on the credibility of the witness' direct testimony, "[t]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness and assessing the probative value of the direct testimony." McCormick, Evidence (2d Ed.) § 29; see *Brown* v. *United States,* 409 A.2d 1093, 1099, (D.C. App. 1979) (rape case).

The court's ruling in limine barred the defendant from cross-examining the victim at all on a matter of substantial relation to her credibility in this sex-related case where credibility was crucial. Her written statement to the police disclosed that she claimed that the defendant's brother-in-law had performed similar sexual acts upon her on occasions in the past. She had never reported any of these to anyone she naturally would have. She kept silent.[15] This was patently relevant to her credibility. In arguing for the right to cross-examine on this, the defendant claimed he wanted to explore whether her claim was fact or "a child's imagination" as well as to inquire concerning the number of complaints she may have made. "Sexual fantasy" is a basis for "broad cross-examination" of the complainant in sex cases. See *People* v. *Francis,* 5 Cal. App. 3d 414, 416–17, 85 Cal. Rptr. 61 (1970), and cases there cited. It makes no real difference that such an examination may only have disclosed her failure to report those incidents against the brother-in-law; the jury are entitled to have such evidence before them in assessing her credibility. It was a proper area of inquiry; it was denied in limine. "[T]he prevention, throughout the trial of a criminal case, of *all* inquiry in fields where cross-examination is appropriate, and particularly in circumstances where the excluded questions have a bearing on credibility and on the commission by the accused of the acts relied upon for conviction, passes the proper limits of discretion and is prejudicial error." (Emphasis added.) *District of Columbia* v. *Clawans,* 300 U.S. 617, 632, 57 S. Ct. 660, 81 L. Ed. 843 (1937); see *Alford* v. *United States,* 282 U.S. 687, 694, 51 S. Ct. 218, 75 L. Ed. 624 (1931); *State* v. *Jones,* 167 Conn. 228, 232–34,

---

[15] Her motive for doing so, i.e., fear, which the state could seek to explicate on redirect, should not be a bar to permitting any of this testimony as the court could control the extent of the cross-examination.

355 A.2d 95 (1974). We find error in the ruling of the trial court. The defendant has sustained his burden of establishing that this erroneous evidentiary ruling was probably harmful to him. See *State* v. *Periere,* 186 Conn. 599, 609, 442 A.2d 1345 (1982).

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.