[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner brought this petition for a writ of habeas corpus alleging that his criminal trial attorney, John Franckling, was ineffective in that (1) he allowed prejudicial evidence to be submitted such as a photograph of his penis, the opinion of a witness as to the ultimate issue in the case, hearsay, constancy of accusation evidence without foundation or limiting instruction, events which were excluded by the court or beyond the Statute of Limitations, and allowed the state to use leading questions without objection; (2) he failed to properly investigate and present evidence for the defense such as using a medical witness to rebut the findings and opinions of state's witnesses, use Dr. Henry Lee to testify as to the non-existence of forensic evidence to support the state's case, properly cross-examine state's witnesses, object to state's evidence for appellate review, bring out relevant defense evidence; and (3) he failed to argue the presumption of innocence, reasonable doubt and motive of the alleged victim.
His criminal trial arose from an arrest on the complaint of his minor stepdaughter of alleged sexual assaults upon her over a period of four years. After a jury trial on various criminal counts arising from that arrest, he was convicted of one count of sexual assault in the first degree and two counts of risk of CT Page 3439 injury to a child, after the court had granted the motion for judgment of acquittal on counts 3 and 4 of the seven count information. The jury found him not guilty on counts 5 and 6.
Mr. Franckling testified that he represented the petitioner at his trial in the latter part of 1998. He determined that the physical results did not bear out the girl's complaints and that his client, being a successful businessman who was both presentable and believable, would at the very least create reasonable doubt. He felt that his client was likewise aided by his claim that his wife was a "hustler" who had a family background where her mother had made like claims against her husband for money reasons. He stated that during the trial various witnesses testified to claims of the complainant which occurred prior to the seventh count of risk of injury to a minor which encompassed events from November, 1986 to March, 1990. He has found in the past where certain leading questions are asked of hearsay recited where they have no effect on the client's interest, not to make frivolous objections for fear of irritating the jury. He allowed Dr. Miller to testify that penile penetration took place because he wanted to be able to show there were not sufficient findings to support such an opinion. He was satisfied to show that Dr. Doura's examination several hours after the examination of Dr. Miller produced findings that were not observed at the time of the examination by Dr. Miller such as the tear on the fourchette and the redness of the vulva. He did in fact argue such differences to place doubt on the opinions of the two doctors, particularly Dr. Doura, concerning the change in condition. He didn't call the state lab expert whom he subpoenaed concerning the forensic material examined because in discussing it with him he didn't like some of his answers which could be prejudicial to his client, and he sent him away so the state would not call him. That evidence was the burden of the state and he did argue its absence to the jury. He was able to cross-examine Officer Sue Howard about the search warrant through which she seized the sheets, pillow cases and comforter from the bed of the complainant and clothes and other things which were brought to the state lab with negative results. He allowed a photograph of the erect penis of the petitioner into evidence so that he could cross-examine Dr. Doura as to the statement of the complainant that the petitioner had pushed his penis deep into her vagina as to whether his examination was consistent with that statement.
Mr. Arpin, who was a close friend of the petitioner and CT Page 3440 employed by him as a carpenter from time to time, testified that the petitioner's stepdaughter exhibited no fear of the petitioner in the many times he had seen them together. He also claimed to be present when Pauline Cardany stated at the Coppermine Café that if he comes up with $10,000 the problem will go away.
The petitioner testified that he had told Mr. Franckling about the $10,000 offer overheard by Arpin but it never was brought up. He also testified he had told him about his wife's hairdresser relating that his wife took money from his pocket every day.
Mr. Franckling called in rebuttal testified that he never received any information about Mrs. Cardany's hairdresser, and that there was one brief statement about a $10,000 offer but the statement was attributed to Carriann and not Mr. Arpin although his notes indicate $10,000 is placed over the name Arpin but the notes of his interview of Arpin reveal no reference to the $10,000.
 I
Mr. Franckling testified that the jury found his client not guilty of counts 5 and 6 which were the allegations of penile penetration for which the photograph of the petitioner's penis was offered. There was no contradiction that, at least as to counts 5 and 6, the photograph was effective probative proof for the defense, and Dr. Miller's opinion of the ultimate issue that penile penetration had occurred since the finding was not guilty.
A review of the transcript convinces this court that both counsel and the court had prior to the offer of constancy of accusation testimony agreed as to the evidence which would be admissible. It was orchestrated by the judge to limit such evidence as is admissible in the concept of constancy of accusation. See State v. Cardany, 35 Conn. App. 728, 732. During such evidence's use the court gave a limiting instruction for each succeeding witness and included such instructions in his charge to the jury. See Transcript Vol. III, pags. 200-203.
Likewise in his final instructions to the jury, the judge limited the deliberations of the jury as to count 7 to events found after November, 1986, See Transcript Vol. III, p. 215, and explained to the jury why any event prior to November, 1986 was properly before them but not a substantive matter of any criminal charge CT Page 3441 against the defendant. See Supplemental Charge Vol. III, p. 227,
as an historical note. The petitioner cites State v. Ouellette,190 Conn. 84 but the Supreme Court reversed there because limiting instructions were not given. Id. 95.
 II
The petitioner did not produce a medical expert who, given the findings of Dr. Miller and/or Dr. Doura, would give an opinion more favorable to the defense. Certainly in argument, given the change in conditions observed from Dr. Miller first and then Dr. Doura, he was able to expose doubt in crediting their opinions whereas the petitioner's medical expert could have confirmed either or both.
Mr. Franckling adequately explained why he did not call the toxicological expert on the forensic examinations and how he had produced the negative results by cross-examination of Officer Sue Howard without bearing the burden of proof.
The petitioner failed to provide substantive evidence that the abusive background produced by Mrs. Cardany's mother ever existed. Mr. Franckling's question to the petitioner's stepdaughter concerning the matter, having drawn a negative response, was as far as he would dare bring it. See TranscriptVol. I, pgs. 80-84, Petitioner's Exhibit 1.
Mr. Franckling did cross-examine Darlene Dopart, Mrs. Cardany's sister, that Darlene never liked the petitioner and, once married, always supported a divorce for her sister. Because her sister did not go forward with the divorce filed in February, 1990, she didn't speak to her for a period of time. He also cross-examined Mrs. Cardany about the the divorce she filed in February 1990 and her attempt attach the petitioner's business and gain exclusive control of the Sperry Road property. This event started just four (4) months prior to the stepdaughter's complaint in June.
 III
Mr. Franckling did briefly mention in his argument the presumption of his client's innocence and the state's burden to prove beyond a reasonable doubt the guilt of the petitioner. He then raised the conflicts in the evidence. The difference of the conditions observed by the two doctors, the presumption of penile CT Page 3442 penetration which both raised, the exaggerations of Mrs. Cardany as to the number of penile penetrations claimed by her daughter when she gave statements to the police, the length of the period of abuse stated by Crystal to various witnesses who testified as to them, as the last few years, four, five, six and seven years, the conflict as to the number of times at the boat and the observed normal family relations, and the lack of physical evidence were all brought to the jury's attention. The court after the arguments gave a lengthy instruction on the principles of the presumption of innocence which had to be overcome by the state and the principle of proof beyond a reasonable doubt without reference to any evidence presented. See Petitioner'sExhibit 1, Transcript Vol. III, pgs. 193-196.
The petitioner presented Mr. Arpin with testimony of overhearing Mrs. Cardany requesting $10,000 and the petitioner's problem would go away. Neither the petitioner nor Arpin said the statement was made to the petitioner. At any rate it obviously was not something fully developed for Mr. Franckling.
Mr. Franckling was able to develop evidence which tended towards motive without the label in his cross-examination of Mrs. Cardany concerning her filing for divorce which was withdrawn when the attachment of his business and the control of the home failed.
 IV
The petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness. Aillon v.Meachum, 211 Conn. 352, 357. Even if the petitioner had been able to do so, a successful petitioner must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Copas v.Commissioner, 234 Conn. 139 (1995); Strickland v. Washington,466 U.S. 668, 694. Both doctors testified of observing a condition which can be described as an enlarged introitus consistent with the history given by Crystal of penile penetration. The doctors were able to give opinions that it occurred by a partial penetration within 7 or 10 days of their examination. Crystal's complaint to her mother on June 4, 1990 about her stepfather's abuse over several years is made credible not only by the doctor's opinions but by her own disclosure at a time when the conduct now physically hurt.
For the above reasons the petition is denied. CT Page 3443
Corrigan, JTR